[File No. 6450.]

M. A. ZIEGLER, Respondent, v. FORD MOTOR COMPANY, a Corporation, and Harley Lowell, Appellants.

(272 N. W. 743.)

Opinion filed February 25, 1937.

*Pierce, Tenneson, Cupler & Stambaugh,* for appellants.

288

*Nilles, Oehlert & Nilles,* for respondent.

MORRIS, J. This is a personal injury action. The defendants appeal from a judgment entered pursuant to a verdict of a jury and from an order of the District Court denying defendants' alternative motion for a judgment notwithstanding the verdict or for a new trial. The defendants assert that the evidence is not sufficient to sustain the verdict, and also urge error on instructions of the trial court and rulings on questions of evidence.

On February 15, 1935, the plaintiff, who is a Ford dealer, went to a branch of the Ford Motor Company in Fargo, North Dakota for the purpose of obtaining an automobile. He was directed to a storage room about 115 by 180 feet in size on the ground floor. On the day in question there were a number of cars and trucks in the storage room. Along the south wall was a passageway about twelve feet wide. The car which the plaintiff had purchased was on the north side of this passageway facing east. The plaintiff entered the storage room through a door from the adjacent display room and approached his car. Finding the trunk locked he stepped around to the right side of the car which was also the side next to the passageway, and reached through the open window in the right front door, and obtained the keys from a small

compartment in the right side of the dash. After he had taken the keys in his left hand, his left leg was struck by the left rear wheel of a truck being driven along the passageway by the defendant, Harley Lowell, an employee of the Ford Motor Company. The plaintiff was thrown to the concrete floor striking and fracturing his right elbow. The wheel ran over plaintiff's left leg up to the thigh before the truck was stopped and was either lifted or backed off the plaintiff's leg. The truck was new and was being prepared for delivery to a dealer. It consisted only of a cab and chassis. The running board extended back only as far as the cab. There were no fenders over the rear wheels, which were of the dual type, and extended from five to nine inches beyond the line formed by the front fender and running board. The motor in the truck operated with little noise and the driver did not sound the horn as he attempted to pass the plaintiff. He saw the plaintiff reaching into the car as he drove by with the front part of the truck.

The defendants contend that the evidence is not sufficient to support the verdict and claim that the truck did not run into the plaintiff, but that the plaintiff, as he withdrew his head and arm from the car after the front of the truck had passed, stepped backward into the side of the truck in front of the rear wheel, that he was negligent in so doing, and that his negligence contributed proximately to his injury and bars his recovery as a matter of law. The plaintiff contends that as he stood beside his car reaching in for his keys and with his left leg extended, Lowell drove by and ran into him with the left dual wheel of his truck. The plaintiff also contends that even if he did step back he was not guilty of contributory negligence because Lowell saw him reach in for the keys and sounded no warning as he drove by, and that failure to sound the warning under the circumstances here existing constitutes negligence which was the proximate cause of the accident.

The jury having found for the plaintiff, we must view the evidence in a light most favorable to him. Several witnesses were present when the accident occurred. One of them testified that he was standing about three feet back of the plaintiff's car and that he could see the plaintiff's leg sticking out with the toe on the ground. The dual wheel was about fifteen inches from the edge of the running board of the car. He saw

the wheels come right up to Ziegler's leg as it stuck out. He did not actually see the wheel strike the leg, but saw Ziegler suddenly fall backwards.

Another witness testified that he was standing a little back and to the south of the car, and that he saw Ziegler put his head and hand through the window of the front door. Then the truck came by. The witness did not hear it nor did he see the front end as it passed him. His attention was called to the truck when the dual wheel brushed his coat in passing. The witness then turned his head to see where the truck was going. It was traveling about four miles per hour. The witness had stepped over further behind the Ziegler car, but he could see Ziegler stooping over with his shoulder in the car window. He had one foot out at an angle, and the wheel came along and caught it. The witness saw the dual wheel just the instant before it came in contact with Ziegler's leg. He saw Ziegler fall back.

Another witness was standing on the south side of the passageway. As the truck went by it passed between him and the plaintiff. The cab momentarily shut off his vision of the plaintiff, but when the cab passed he saw Ziegler leaning over with his head and shoulders in the car. Ziegler's feet and legs were obscured by the truck's chassis. This witness did not see the wheel strike the plaintiff's leg, but he saw the plaintiff "come out of the car and fall backward." There is also testimony of three witnesses that the truck was driving on a curve toward the left, which would bring the rear wheels closer than the front to an object on the left side of the truck.

The plaintiff testified that he was reaching into the compartment on the right side of the dash for the keys with his body against the door, his right leg against or very close to the running board, his left foot extended back and resting on the floor; he grasped the keys in his left hand and may have started to withdraw from the car when the truck struck his left leg and threw him backward or sidewise on the cement floor so that the dual wheel ran up his left leg to the hip.

Four witnesses testified that the plaintiff stepped back with his left foot into the side of the truck as it passed. The defendants contend that the physical facts demonstrate that these witnesses were correct and since the plaintiff leaned in through the car window and reached into

the compartment with his left hand he could not have stood on his right foot with his left foot extended backward, and that he must have stepped back in order to bring the left foot and leg in contact with the wheel. We do not wish to imply that even if Ziegler had stepped back, as contended by the defendants and under the circumstances shown by this record, that he would have been guilty of contributory negligence. (See Larson v. Farmers' Elevator Co. 63 N. D. 396, 249 N. W. 116.) It is unnecessary to decide this point.

We do not have the benefit of the demonstrations of plaintiff's position that were given before the jury, but the testimony describes his position with sufficient clarity for us to say it was not an impossible one. There was sufficient testimony upon which the jury could determine it to be a fact that at the time of the accident the plaintiff's position was that which he claims it to be. The accident did not occur upon a street or highway, but on private premises where the plaintiff was an invitee. He was in the storage room on business. He had a right to be there. In going about his business he was required to use ordinary care. If he used such care he was not negligent. Moreover, he had a right to assume that the driver of any vehicle being moved about the floor would use ordinary care not to injure him. The mere fact that the accident happened does not prove either the negligence of the defendants or the contributory negligence of the plaintiff, but the circumstances under which it happened as related by the witnesses and the reasonable conclusions that may be drawn therefrom, were for the consideration of the jury in arriving at their verdict. Questions of whether negligence or contributory negligence existed are questions of fact under the evidence here presented and are for the jury. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Solberg v. Schlosser, 20 N. D. 307, 127 N. W. 91, 30 L.R.A.(N.S.) 1111; Jackson v. Grand Forks, 24 N. D. 601, 140 N. W. 718, 45 L.R.A.(N.S.) 75; Williams v. Minneapolis, St. P. & S. Ste. M. R. Co. 57 N. D. 279, 221 N. W. 42; Axelson v. Jardine, 57 N. D. 524, 223 N. W. 32; Logan v. Schjeldahl, 66 N. D. 152, 262 N. W. 463; State ex rel. Brazerol v. Yellow Cab Co. 62 N. D. 733, 245 N. W. 382; Ferm v. Great Northern R. Co. 53 N. D. 543, 207 N. W. 39; Dougherty v. Davis, 48 N. D. 883, 187 N. W. 616; Farmers' Mercantile Co. v. Northern P. R. Co. 27 N. D. 302,

146 N. W. 550; Newton v. Gretter, 60 N. D. 635, 236 N. W. 254. In this case we conclude there was ample evidence submitted to the jury upon..which they might find that the proximate cause of the accident was the negligent operation of the truck by the defendant Lowell, and that the plaintiff was not guilty of negligence which contributed proximately to his injury.

. The defendants predicate error upon the following instructions of the court:

"If, from a fair preponderance of the evidence, you find the defendant Harley Lowell, in the exercise of ordinary care, should have sounded a warning as he operated his truck at the time and place alleged, but neglected to do so, and that, as a proximate result of his failure, a collision occurred, and plaintiff received injury, then, the defendants were guilty of actionable negligence, and if the plaintiff was in the exercise of ordinary care, your verdict in this case should be for the plaintiff, M. A. Ziegler."

The defendants cite in support of their contention, Field v. Collins, 263 Ky. 474, 92 S. W. (2d) 793. That case involved a street accident. The trial court instructed the jury on the duty of operators of automobiles with respect to sounding warnings under a statute providing therefor. The appellate court held that the statute requires the sounding of the horn or other sounding device only when necessary as a warning of the approach of an automobile "and no instruction on the sounding of the horn or other device should be given unless there is evidence to show that it was necessary as a warning to those who were not aware of the danger from the approaching vehicle." In this case the court did not instruct upon the duty of the operator of the truck to sound a warning other than to present to the jury the question of fact as to whether the operator, in the exercise of ordinary care, should have sounded such warning. Hausken v. Coman, 66 N. D. 663, 268 N. W. 430. The instruction given was not erroneous.

. The defendants specify as error the court's failure to further instruct the jury upon its return to the court room after having been out several hours. The jurors reported to the court that they had been unable to arrive at a verdict and were having difficulty with the instruction on negligence. The court again read the instruction previously given on negligence and advised the jury that the instructions should be read

as an entirety. He asked anyone who did not understand the instruction to so indicate by raising his hand. No response was made to this request by the court, and no request was made for further instruction upon any point by either members of the jury or counsel. The jury was then sent back for a further consideration of the case. The record clearly indicates that the court was willing to further instruct upon any point that the jury might desire, but being unable to ascertain that any juror failed to understand the instructions as given, the jury was permitted to retire for further consideration of the case. We fail to see what more the court could have done under the circumstances. Clearly his conduct did not constitute error.

We·have carefully considered plaintiff's other specifications of error both with reference to instructions and rulings on the admission of evidence during the course of the trial and found no prejudicial error.

The verdict was for $16,000.00 which the defendants claim is so excessive as to indicate that it was given under the influence of passion and prejudice. The plaintiff, at the time of the accident, was forty-four years of age. He suffered injuries to his right arm and left leg. The injury to the right elbow resulted from striking the concrete floor as plaintiff fell. It is technically described as "comminuted fracture, intercapsular with partial dislocation of the elbow joint" which required an operation during which chips of bone were removed and the larger pieces were wired up with rustless steel wire put through holes drilled in the bone. At the time of the trial, which was about a year after the injury, the plaintiff still suffered from a substantial disability described as a thirty-five degree loss of extention of the forearm, a forty degree loss of flexion, and a thirty per cent loss of rotation. He also suffered an injury to the ulnar nerve which affected the use of his hand by causing paralysis of the little finger and impaired use of the other fingers. The plaintiff, at the time of the trial, could write a little, but was unable to keep his business books as he had done prior to the injury, and was required to hire a bookkeeper at $75.00 a month to do this work. The testimony shows that there will be some recovery in the motion of the forearm and fingers.

The injury to the left leg consisted of a bruise from the ankle to the hip and a permanent injury to the left knee resulting from a ruptured or torn ligament which permits the knee bone to slip for-

ward on the thigh bone sufficiently to cause the knee to be unstable. The plaintiff can walk fairly well on level ground, but has difficulty when walking .long distances or over rough ground. The condition could not be improved by an operation. One physician recommends the use of an elastic bandage, while another advises against it. The plaintiff's medical and hospital expenses were $746.98.

The trial was fairly conducted and there is ample evidence to sustain the liability of the defendants. If passion or prejudice on the part of the jury existed it is reflected in and affected only the amount of the verdict. The trial court, to whose sound judicial discretion the motion for new trial was addressed, denied the motion, and unless the court abused such discretion in so doing, this court will not interfere. State use of Workmen's Comp. Fund v. Northwest Nursery Co. 66 N. D. 704, 268 N. W. 689; Reid v. Ehr, 36 N. D. 552, 162 N. W. 903; Mason v. Underwood, 49 N. D. 243, 191 N. W. 949; Burdick v. Mann, 60 N. D. 710, 236 N. W. 340, 82 A.L.R. 1443; Halverson v. Zimmerman, 56 N. D. 607, 218 N. W. 862; Northwest Engineering Co. v. Gjellefald-Chapman Constr. Co. 57 N. D. 500, 222 N. W. 621. If the size of the verdict in relation to the injury sustained is so excessive as to demonstrate to the court that the jury has been misled by passion or prejudice in determining the amount of damages, the trial court should grant a new trial or reduce the verdict, and in a case where it appears "that the passion and prejudice affected only the amount of damages allowed, and did not influence the findings of the jury on other issues in the case," the error resulting from the excessive damages may be corrected either by the trial court or by this court on appeal by ordering a reduction of the verdict in lieu of a new trial, or by ordering that a new trial be had unless the party in whose favor the verdict was given remit the excess of damages. 1925 Supplement to Comp. Laws 1913, § 7660, subd. 5, Halverson v. Zimmerman, 56 N. D: 607, 218 N. W. 862, supra; Moen v. Moen, 65 N. D. 40, 256 N. W. 254.

In this case there is no direct evidence of the extent of loss of earning power or actual financial loss occasioned by the injury other than the cost of treatment and the hiring of a bookkeeper. The evidence shows that the arm injury prevents plaintiff from keeping his own books, but it also shows that he can now write some and that the condition of his arm will improve. The injury kept the plaintiff away from

his business for three months, but the financial loss, if any, as a result thereof, is purely a speculation since the record does not show a loss of business or profits during that time. One of the elements of damages which the jury had a right to consider was plaintiff's pain and suffering. It is for the jury to determine within reasonable limits what the compensation for this should be, but they should have in mind at all times that the purpose of any verdict rendered by them is adequate compensation to the plaintiff for his injuries without regard to sympathy, or the financial condition of the parties, or either of them. We have given lengthy and careful consideration to the amount of the verdict and the relationship of both the jury and the trial court thereto under the law. We are of the opinion that the amount awarded exceeds reasonable bounds and it is our duty to reduce the sum under the authority vested in us by the statute. The judgment is, therefore, reduced to $10,000.00 and all costs, and as so reduced is affirmed upon the condition that the respondent file a remission of the excess in the district court within thirty days after the remittitur from this court is filed in the office of the clerk of the district court. Upon failure to comply with this condition a new trial will be had with costs to abide the event.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE and BURR, JJ., concur.