[File No. 6853.]

MAE LEONARD, Respondent, v. NORTH DAKOTA CO-OPERA-
TIVE WOOL MARKETING ASSOCIATION, a Corporation,
Appellant.

(6 NW(2d) 576.)

Opinion filed November 30, 1942. Rehearing denied December 19, 1942.

*Nilles, Oehlert & Nilles,* for appellant.

312

Simpson, Mackoff & Kellogg, for respondent.

314

MORRIS, J.   This is an action for personal injuries received by the plaintiff in an accident involving the head-on collision of two automobiles on U. S. Highway No. 10 about 12 miles west of Jamestown, North Dakota, on June 29, 1940.   The plaintiff was riding as a guest in an automobile owned and operated by John P. Grady.   At the time of the accident this automobile was proceeding in a westerly direction. The other automobile was proceeding in an easterly direction.   It was owned by the appellant corporation and at the time of the accident was being operated by Mrs. Paul Groff whose husband was riding with her.   The case was tried to a jury and a verdict rendered in favor of the plaintiff.   The North Dakota Co-operative Wool Marketing Association appeals from a judgment entered pursuant to this verdict and from an order of the district court denying appellant's alternative motion for a judgment notwithstanding the verdict or for a new trial.

An automobile is not a dangerous instrumentality and as a general rule liability for the negligent operation of such a vehicle by one other than the owner cannot be predicated on mere ownership.   Posey v. Krogh, 65 ND 490, 259 NW 757.   The appellant contends that Mrs. Groff was operating the automobile at the time of the accident solely for the convenience and purpose of her husband and herself, and that its operation at that time was in no way connected with the appellant's business or under its authority.   The plaintiff, on the other hand, contends that Mrs. Groff was operating the automobile as agent of the appellant and with the appellant's authority.   Thus, the question of agency becomes the first question to be determined irrespective of any question of the negligence of the drivers of the two automobiles.   It is a question of fact that has been determined in favor of the plaintiff by the jury under the instructions of the court.   Some of these instructions have been challenged by the defendant.

The question of the existence of an agency and the scope and extent of the agent's authority is to be decided from all facts and circumstances in evidence and is primarily a question of fact for the jury. Ellis v. Nelson, 36 ND 300, 162 NW 554; McIntosh v. Dakota Trust Co. 52 ND 752, 204 NW 818, 40 ALR 1021; 3 CJS 330.

At the time of the accident, Paul Groff, husband of the driver of the car, had been employed by the appellant corporation for about three years as a field representative or supervisor. The corporation was engaged in buying wool. In carrying on its business it had agents in various parts of the state. Paul Groff had authority to appoint such agents with the approval of the general manager. The home office of the corporation was in Fargo. Paul Groff's name appeared on the stationery of the corporation as field supervisor. He had authority to buy wool and to issue drafts. The corporation furnished him the automobile involved in the accident and reimbursed him for traveling expenses. It honored a draft drawn by him on June 26. It paid him a salary until the end of June, 1940. For some time prior to the accident, Paul Groff worked in the vicinity of Minot. He became ill while staying at a hotel in that city. His wife left Fargo and joined him at Minot during his illness. The wife's name is Esther. There is in evidence a telegram dated at Minot, North Dakota, June 25, 1940, which reads as follows: "Esther will drive coupe home Woodrow unnecessary condition improved."

The telegram bears the penciled notation in the handwriting of the manager "Phoned, advising we were sending man to drive car to Fargo."

The filing time at Minot is indicated as 10:23 P. M. The message was received in Fargo at 10:32 P. M. The record does not show when it was delivered although the manager admits receiving it. Woodrow is the son of the manager who testified that he intended to send the son to Minot to drive the car back to Fargo. Upon receipt of the telegram no one was sent to Minot and no further attempt to communicate with the Groffs was made. The manager says he "assumed the car was on the way in." Mr. and Mrs. Groff left Minot on June 28 and proceeded to Bismarck where they stayed all night. The following morning they started for Fargo and reached the point where the accident happened at about 11:00 o'clock A. M.

On July 2, 1940, the appellant, through its general manager executed an employer's report of Paul Groff's injury which contained the following questions and answers:

"Was employee injured in course of employment? Yes.

"Was injured doing his regular work? Yes."

It is strenuously argued by the appellant that at the time the accident happened Mrs. Paul Groff was driving the automobile at the sole request of her husband and for his convenience, and that he had no authority as agent of the appellant to designate or authorize his wife to drive the car. Appellant cites the case of McIntee v. Baker, 66 ND 669, 268 NW 661. However, in that case the undisputed evidence disclosed that "the car involved in the accident was not any car entrusted to the employee in the matter of his employment." This court reached that conclusion from facts that differ greatly from those now before us. In that case an employee of the defendant took a truck from the garage in which it had been placed by another employee and with two friends drove to a Sunday ball game in a neighboring town. An accident occurred while one of these friends of the employee was driving. The employer did not consent to or know of the use of the truck. It further appeared that upon arrival in the town where the ball game was to take place the employee and his friends stopped at a meat market to get some bologna where the proprietor made some inquiries about hides and asked the employee when he was coming up. The reply was that he "would be there sometime the coming week to pick them up." This court held as a matter of law that "at the time of the collision involved the employee was not engaged in the employer's business."

The jury having returned a verdict for the plaintiff is presumed to have determined all questions of fact within the jury's province in favor of the plaintiff. Among those questions are the agency of the driver of the car and whether, at the time the accident occurred, the driver was acting within the scope of her authority. It is only when the facts are such that reasonable minds could draw but one conclusion that these questions are for the court. Parker Motor Co. v. Northern Packing Co. 58 ND 685, 227 NW 226; Kohlman v. Hyland, 54 ND 710, 210 NW 643, 50 ALR 1437; Clark v. Feldman, 57 ND 741, 224 NW 167.

The automobile was furnished by the appellant as a means of transportation for its field supervisor, Paul Groff. He had authority to use it in the business of the company which entailed occasional trips

to the home office at Fargo. The appellant strenuously contends that the record discloses no authority on the part of Paul Groff to delegate to another the right to drive the appellant's car or to employ a sub-agent to do so. However, the agency and authority of Mrs. Groff is not determined solely by this point. Paul Groff was ill and presumably unable to drive the car to Fargo. The inference may also be drawn from the record that the general manager of the appellant desired to have the car returned to Fargo. Groff and his wife also wanted to return to Fargo. The manager intended to send his son to Minot to drive the car back. When Groff learned this he telegraphed the manager that it would be unnecessary to send a driver to Minot for the car and that Mrs. Groff would drive it back. As matters then stood, this arrangement appeared to be mutually beneficial to all parties concerned. Mr. and Mrs. Groff would have transportation to Fargo and the appellant would have the car returned to its home office. After receiving the telegram the general manager made no further effort to communicate with his field supervisor. From these facts the jury might and no doubt did infer that the general manager acquiesced and agreed to the arrangements whereby Mrs. Groff became the driver of the car as the agent of the appellant. In view of these facts and the inference that the jury was entitled to draw therefrom the question of the agency and the authority of Mrs. Groff is one of fact for the jury and not a question of law for the court.

The appellant challenges the instructions of the trial court regarding agency. One of the instructions so challenged was taken from the opinion of this court in Ulman v. Lindeman, 44 ND 36, 176 NW 25, 10 ALR 1440. Under the facts disclosed by this record the giving of that instruction was appropriate.

In the other challenged instruction the court told the jury that the evidence was undisputed; that Paul Groff at the time of the accident was an agent or employee of the appellant. The appellant urges that under the pleadings and under the facts disclosed by the evidence there is a dispute as to whether Paul Groff at the time of the accident was an agent or employee of the appellant. As to the pleadings, the complaint alleges that Paul Groff was an agent and servant of the appellant. This is denied by the answer. The evidence, however, dis-

closes no dispute on this point. Groff was paid until the end of the month during which he was injured. The report to the Workmen's Compensation Bureau discloses that at the time of the accident he was an employee of the appellant and was then acting in the course of his employment. According to his own testimony immediately prior to the accident he was reading his reports. The court's instruction was in accordance with the facts disclosed by the evidence and was not erroneous.

The appellant challenges the correctness of the verdict on the ground of the sufficiency of the evidence. Most of the major facts dealing with the accident are in dispute. The witnesses are in direct conflict on many important points. However, the court and the jury both heard the witnesses and observed them on the witness stand. The jury had decided in favor of the plaintiff. The trial court denied a motion for judgment notwithstanding the verdict or in the alternative for a new trial. As the record now comes to us we must look upon the evidence in the light most favorable to the verdict. Conflicts of testimony must be resolved in favor of the plaintiff.

The evidence discloses that the plaintiff who was fifty-seven years of age was returning from Grand Forks to Dickinson with one John Grady who was the owner and driver of the car in which she was riding when the accident occurred. They left Grand Forks about 6:30 A. M., June 29, 1940. They had reached the point about twelve miles west of Jamestown when they met the car driven by Mrs. Groff. A head-on collision occurred that resulted in serious injury to the plaintiff. We will describe these injuries more in detail in connection with the consideration of the question as to whether the verdict was excessive. The road on which they were traveling was surfaced with what is known as "oil mix" or "black top." The oil surface was about 22 feet wide and in addition to that there was a shoulder about 2 feet wide on each side. Beyond the shoulders were ditches. The plaintiff, Mrs. Leonard, does not have a clear recollection of seeing the car approaching from the west but was suddenly conscious of something in the road ahead an instant before the collision occurred. Both she and the driver were rendered temporarily unconscious by the impact. She

recovered consciousness for brief intervals but did not fully recover her faculties until sometime later when she was in a hospital at Jamestown.

John Grady testified that as he was driving west on Highway No. 10 at a speed of about 45 miles per hour another car came over a small knoll or hill at a speed of about 70 miles per hour. Grady was on the north or right side of the highway as he traveled west. The cars collided at a point of about 300 feet east of the hill. When he recovered consciousness he had been removed from his car and was lying on the ground. He had both legs broken. A passing doctor administered first aid to the injured which included the injection of a drug to relieve pain. Grady was taken to a hospital in Jamestown in an ambulance and was unconscious at intervals until after he reached the hospital.

Just prior to the accident Mr. and Mrs. Strand were driving east on Highway No. 10. As they approached the top of the hill that has been referred to they were passed by the car driven by Mrs. Groff the speed of which Mrs. Strand estimates to be about 70 miles per hour or better. Mr. Strand testified that he was going about 42 miles per hour and that the Groff car was traveling about twice as fast. Mrs. Strand further testified that she watched the Groff car go over the hill and that it was travelling on the north or left side of the road. When the Strands passed over the hill they came upon the scene of the accident about 300 feet east of the crest.

The witnesses for the appellant have a different version. Paul Groff and his wife both testified that she was driving between 40 and 50 miles per hour on the right or south side of the road as she proceeded east. As she approached the oncoming caar it cut across the road toward the south side and the collision immediately occurred. According to the sheriff of Stutsman county who reached the scene shortly after the accident, the Grady car was in the ditch on the north side of the highway and the Groff car in the ditch on the south side. Each of the cars had the left side of the front crushed back. Both cars were badly damaged. Tire marks indicated that the Groff car was travelling on the south side of the highway and that the brakes had been applied about 118 feet from the point of impact; that the tracks of the Grady car indicated the application of brakes about 15 feet from the point of impact. These tracks lead diagonally across the center line

of the highway to the south and that the point of impact as indicated by the tracks was about 6 feet from the south side of the surfaced portion of the highway. The sheriff further testified that the accident occurred about 900 to 1000 feet east of the crest of the hill.

The sheriff also testified that later that same day he saw Grady in the hospital and told him that he must either have been drunk or he fell asleep. Grady then replied: "I went to sleep." Grady categorically denies that he made such a statement. Grady had been given a hypodermic at the scene of the accident and after he had been received in the hospital was treated for shock. The foregoing summary of the testimony of the chief witnesses indicates conflict on most major points. The jury, not the court, is the trier of the facts.

The court instructed the jury that: "The plaintiff must prove by a fair preponderance of the evidence that the operator of that car operated it in a negligent manner and that the negligence of the operator of the car was the proximate cause of the injury; that that car at the time was being used in the course of the agent's employment. . . . She must prove by a fair preponderance of the evidence the specific act or acts which she contends were negligent and that such act or acts constituted the proximate cause of the injuries which she sustained."

The court then instructed the jury as to certain statutory rules of the road including those pertaining to speed and continued: "In this connection the court charges you even though you find that the car in question was driven at an excessive rate of speed and at greater speed than the restrictions placed thereon by the Legislature, as I have directed your attention, yet, if such excessive rate of speed was not the proximate cause of the collision, that is, if the collision did not occur by reason of the speed at which the car was so driven and that such rate of speed was not the proximate cause of the injuries which the plaintiff claims she sustained, then such excessive rate of speed would not constitute negligence."

The court then instructed further with regard to the statutory rules of the road pertaining to driving on the right side and then continued with the following admonition:

"If, however, the violation of the law of the state in this regard was

not the cause of the collision and the proximate cause of the injuries which plaintiff alleges she received, in that event, even though the law may have been violated by defendant in the operation of the car as contended for by the plaintiff, such violation would not constitute negligence and the plaintiff would not be entitled to recover thereon. . . . If you find that the defendant's agent was not negligent, but instead that John Grady, the operator of the other car, was negligent, and it was his negligence which was the sole and proximate cause of the accident, then your verdict should be for the defendant.

"You have been instructed that before plaintiff can recover she must prove by a fair preponderance of the evidence that the defendant's agent or the driver of the car was guilty of negligence and that such negligence was the proximate cause of the plaintiff's injury. In this connection, however, I instruct you further that such negligence need not be the sole cause of the injury. It is sufficient, if the defendant's negligence is an efficient cause, without which the injury would not have resulted. The fact that more than one cause combines to produce an injury does not relieve defendant from liability because it was responsible for only one of them, it being sufficient that defendant's negligence, if such you find existed from a fair preponderance of the evidence, is an efficient cause without which the injury would not have resulted. However, it must appear that defendant was responsible for one of the causes which resulted in the injury. By way of explanation I further instruct you that although you may find that John Grady was negligent in the operation of his car and that his negligent act concurred in and contributed to the injury, yet, if the defendant's negligent act complained of herein was also one of the efficient or proximate causes of the injury, your verdict should be for the plaintiff, even though there may be more than one proximate cause and notwithstanding the fact that Grady's negligence, if any, contributed to the injury. The fact that John Grady may have been negligent, his negligence is not imputed to this plaintiff under the evidence in this case."

"To be the proximate cause of an injury the negligent act or omission must be one of the efficient causes producing the injury. It need not be the sole cause nor the last or nearest cause, but it is sufficient if

it concurs with some other cause acting at the same time which in combination with it causes the injury."

From the foregoing it appears that the trial court's instructions, with reference to the question of proximate cause, were favorable to the appellant. To constitute a negligent act the proximate cause of injury so as to sustain a recovery, it is not necessary that the act be the sole cause of the injury. Where an injury is the result of separate and distinct acts of negligence by different persons operating and occurring simultaneously and concurrently, each act may be regarded as a proximate cause and recovery may be predicated upon either or both acts. Stockfeld v. Sayre, 69 ND 42, 283 NW 788; Missouri Motor Distributing Co. v. Barker, 170 Okla 183, 39 P (2d) 544; Kuhn v. Kjose, 216 Iowa 36, 248 NW 230; Simmons v. Leighton, 60 SD 524, 244 NW 883; 4 Blashfield, Cyc. of Automobile Law & Practice, Perm. ed. § 2573; Berry, Automobiles, 7th ed, § 2.334.

The questions of negligence, contributory negligence, and proximate cause "are always questions of fact for the jury in an action for personal injuries, unless the evidence is such that but one conclusion can be drawn by reasonable minds." State ex rel. Brazerol v. Yellow Cab Co. 62 ND 733, 245 NW 382; see also Bratvold v. Lalum, 68 ND 534, 282 NW 514; Logan v. Schjeldahl, 66 ND 152, 262 NW 463; Ziegler v. Ford Motor Co. 67 ND 286, 272 NW 743.

The portions of the road upon which the cars were travelling immediately prior to accident and their rates of speed are in substantial dispute. The conflict of testimony as to the speed of the cars and their positions on the highway as well as the question of the proximate cause of the accident present questions of fact to be resolved by the jury. Sheffield v. Stone-Ordean-Wells Co. 49 ND 142, 190 NW 315; Logan v. Schjeldahl, 66 ND 152, 262 NW 463, supra; Bak v. Walberg, 65 SD 292, 273 NW 381; 4 Blashfield, Cyc. of Automobile Law & Practice, Perm. ed. §§ 2593 and 2611.

In view of the well-settled law in this state as to the limited province of this court in cases that have been tried to a jury we are bound by the determination of the facts as indicated by the jury's verdict. The record is such that the questions of negligence and proximate cause were

for the jury and no question of law is presented with reference thereto.

The appellant predicates error on the refusal of the trial court to give the following requested instruction: "The jury are instructed that no damages can be allowed to the plaintiff for any future detriment, except for such detriment or damages which are certain to result in the future."

It is argued that the appellant was entitled to have the requested instruction given because it is a substantial statement of the statutory law as found in § 7141, ND Comp. Laws 1913, which reads as follows: "Damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof or certain to result in the future."

There is no question but that the statute is applicable to the facts in this case but that does not establish that the failure to give the requested instruction is error.

Appellant cites York v. General Utilities Corp. 41 ND 137, 170 NW 312, wherein this court held that it was prejudicial error to instruct the jury that they might consider " 'the likelihood of the injuries being permanent, the pain he has suffered or may be likely to suffer in the future.' " The York Case together with the statute above quoted were considered in Larson v. Russell, 45 ND 33, 176 NW 998, wherein this court said:

"We are of the opinion that the word 'certain' appearing in the statute is not used in the absolute sense. It relates to the future, and therefore cannot be construed as only embracing those consequences or elements of damages which are absolutely certain to follow a given injury, for future happenings are necessarily somewhat uncertain.

"The section had its origin in the original Field Code, § 1467, Draft of Civil Code for the State of New York (1862) and the commissioners contented themselves with citations to Sedgwick, Damages, 104, and Wilcox v. Plummer, 4 Pet (US) 172, 182, 7 L ed 821, 824. Reference to these authorities discloses that the rule of damages codified by the section in question is the rule according to which all damages for a given injury must be recovered in one suit, which requires, according to the rule stated by Sedgwick, § 86, that the recovery shall embrace not only compensation for loss already sustained 'but also

for such loss as he (the plaintiff) can with reasonable certainty show will accrue in future.' Sedgwick further points out that a contrary rule had formerly existed in England under which damages were allowed only to the time of the commencement of the action. Comyns's Dig. Damages, D; Pilfold's Case, 10 Coke 115b, 77 Eng Reprint, 1102. The clear purpose of the statute, then, was to alter this rule, and enable a plaintiff to recover damages which are reasonably certain to accrue in the future."

The effect of this decision is to construe the statute so as to take some of the certainty out of the word "certain" as used therein. The salutary effect of this decision is to give the statute a reasonable application rather than one so literal and rigid as to make the proof of future detriment practically impossible.

The trial court in the case at bar instructed the jury as follows: "The measure of damages as to the personal injuries which plaintiff sustained in such collision, if she so sustained personal injuries, is the amount of money which will compensate her for all actual detriment, past or prospective, proximately caused thereby, not to exceed $25,000, whether it could have been anticipated or not. You may allow compensation for personal injuries, pain and suffering, if any. If you find the plaintiff has sustained personal injuries you may take into consideration whether they are of a permanent character or not."

The failure to give the requested instruction did not constitute prejudicial error.

Other specifications of error have been urged by the appellant. We have examined them and found them without merit. No good purpose will be served by expanding this opinion to include their discussion.

The amount of the verdict was $17,153.55. The appellant argues that this amount is excessive. Under the rule laid down in Ziegler v. Ford Motor Co. 67 ND 286, 272 NW 743, supra: "If the size of the verdict in relation to the injury sustained is so excessive as to demonstrate to the court that the jury has been misled by passion or prejudice in determining the amount of damages, the trial court should grant a new trial or reduce the verdict, and, in a case where it appears 'that the passion and prejudice affected only the amount of damages

allowed, and did not influence the findings of the jury on other issues in the case,' the error resulting from the excessive damages may be corrected either by the trial court or by this court on appeal by ordering a reduction of the verdict in lieu of a new trial, or by ordering that a new trial be had unless the party in whose favor the verdict was given remit the excess of damages."

The plaintiff was rendered unconscious by the accident. This lasted but a short time but she lapsed into unconsciousness at times on the way to the hospital in Jamestown. The doctor who attended her at that hospital described her injuries as a fracture of both bones of the lower right leg; a cut over the right side of the chin; a 2 inch cut across the upper lip; a 1½-inch jagged cut over the left eyebrow and temple; a leg fracture wound of the right knee that did not involve the joint; a bruise of the left thigh and a bruise and ecchymosis of the left eye. She was also suffering considerable shock when she arrived at the hospital. The fractures were not compound. There was considerable bleeding in the tissues of the leg.

The doctor describes the treatment in the following language: "This fracture was more or less of what we call an oblique fracture and overriding and after she had recovered from the shock, temporary splints had been put on after she came in, but after she recovered from the shock—I think it was the next day—she was—a pin was put through the heel. It's what we call Kirchner pin to make traction—a pin that goes through the bone. It's put in under a local anesthetic and which goes through the bone and is fastened in such a way that it is under tension like a piano wire, stretched and then weighted so that it pulls the leg down into position.

"Q. That's in the heel, did you say?

"A. In the heel, yes, just below the ankle it's placed, and then X-ray pictures were taken the next day to see if it was pulled down into position, which X-ray showed that it was and the cast was applied."

She complained of pain in her leg and was given sulfanilamide to try to prevent infection. In about four or five days she developed parotiditis or inflammation of the glands. The following day she developed erysipelas. After a time the erysipelas and parotiditis cleared up. X-ray pictures disclosed that the bones were brought in

close alignment and it was the opinion of the doctor that they should heal up perfectly so far as the formation of the bone is concerned. She was released from the hospital on September 1, 1940.

After leaving the hospital the plaintiff went to her home in Dickinson. Her leg was still in a cast. During the first week of September she called Dr. Bowen of Dickinson who found that there was infection under the cast. He treated this infection. He told her to keep off her foot and keep the leg heated. The infection healed up within six or eight weeks. She complained of pain in her foot and there was considerable swelling around the toes and ankle. The doctor then says: "The foot began to contract more and more. That is, it would invert, turn in and the big toe would turn down, what they call a drop foot." An X-ray picture disclosed that the bone was in good shape but the foot continued to cause trouble. The doctor then put on another cast. Later he attached an iron to the cast so that she would not bear weight on the foot. She was then walking with the aid of crutches. That was in the summer of 1941. After leaving the iron on for about two months the doctor took it off and advised her to consult an orthopedic specialist in Fargo which she did. After her return Dr. Bowen continued with physical therapy which includes the application of light and heat. The contraction and inversion of the foot continued. He also put on a split cast that could be taken off for treatment. At the time of the trial the condition was the same as it had been during the past year. It was the doctor's opinion that the condition was permanent.

At the time of the accident the plaintiff was fifty-seven years of age. Her life expectancy was 16.21 years. Prior to the accident the plaintiff was a housewife and a housemother having as roomers eight college girls. She acted as supervisor of these girls in her home. Plaintiff's expenses resulting from the injury amounted to $943.55. There is no evidence of the actual earning power of the plaintiff. Because of plaintiff's age, occupation and apparent lack of specific training, her earning power must of necessity be moderate. After the plaintiff's expenses are deducted from the verdict the amount is still in excess of $16,000.

Pain and suffering may be considered by a jury as one of the ele-

ments of damages but sympathy may not be made the basis for rendering or upholding an otherwise excessive verdict. The purpose of an award of damages is to compensate for an injury. It is for the jury to determine that compensation within reasonable limits. If those limits have been exceeded by the jury it is the duty of the court to make a proper reduction or grant a new trial. After a careful consideration of all of the legitimate elements that may be relied upon to support an award of damages for personal injuries we have reached the conclusion that the amount of the verdict is excessive and it is our duty under the law to make a proper reduction. The judgment is therefore reduced to $12,000 and all costs and as so reduced is affirmed upon the condition that the respondent file a remission of the excess in the district court within thirty days after the remittitur from this court is filed herein. Upon the failure of the plaintiff to comply with this condition a new trial will be had with costs to abide the event.

BURR, Ch. J., and CHRISTIANSON, J., concur.

NUESSLE, J. (dissenting). I am unable to agree with all that is said in the foregoing opinion and therefore dissent.

The jury were instructed on two theories under either of which they may have returned their verdict. This instruction, challenged by appellant, reads: "Further, in connection with this matter of employment I instruct you that where a servant employed to drive the car of his master directs or permits a stranger to operate such car in the master's business and in the presence of the servant, the master may be held liable for its negligent operation upon the grounds that such operation was, in fact, the servant's operation; or, that where the servant employed to operate the automobile selects the stranger to drive the car in his place upon the express or implied permission or direction of the owner thereof, the liability for the negligent operation of the automobile may be fastened upon the owner by reason of the consent or permission of such owner, if the servant is then and there in the course and scope of his employment and is present at the time of such operation."

The first part of the instruction is predicated on the theory of "constructive identity" or "vicarious responsibility," the latter part on

the theory of express or implied permission or direction on the part of the defendant. I take no exception to the latter, but, notwithstanding what is said in the case of Ulman v. Lindeman, 44 ND 36, 176 NW 25, 10 ALR 1440, I cannot agree that the instruction on the theory of constructive identity was a proper one. I think this theory is illogical and wholly inconsistent with the principles of the law of agency. It seems to have originated in an early English case and was later applied in the case of Booth v. Mister, 7 Car & P 66, 173 Eng Reprint 30. In this country it was followed in the early leading case of Althorf v. Wolfe, 22 NY 355, where what is said in Booth v. Mister is quoted with approval. And it is on the authority of these cases that the doctrine where approved in American jurisdictions is largely predicated.

Mr. Labatt, in his work on Master & Servant, 2d ed, Vol. 7, § 2516, has this to say concerning the English cases touching this matter: "Among the precedents relied upon in a case decided about a century ago was an unreported decision which proceeded upon the theory that a master might be held responsible for the negligence of a stranger employed by a servant having no power to create any contractual relationship between him and the master. That theory also finds some support in a ruling made by Lord Abinger in a nisi prius case (Booth v. Mister). But these authorities are inconsistent with the more recent statements of the law in England and Ireland."

And in the same section, after commenting on the case of Althorf v. Wolfe, he "ventures to express the opinion that the decision, in so far as it rests upon that doctrine, is an extremely unsatisfactory one." And in Mechem, on Agency, 2d ed, § 1867, it is said: "The limits of this doctrine must be narrow; it can probably be applied only when the servant is actually directing and controlling the act, and so personally and immediately in charge that the act of the third person may fairly be regarded as the act of the servant."

Many of the cases approving the doctrine of constructive identity also cite the Minnesota case of Geiss v. Twin City Taxicab Co. 120 Minn 368, 139 NW 611, 45 LRA (NS) 382. The court there said: "We approve the rule that, when the master intrusts the performance of an act to a servant, he is liable for the negligence of one who, though

not a servant of the master, in the presence of his servant and with his consent negligently does the act which was intrusted to the servant. A clear application of this rule is found in the model opinion in Booth v. Mister, 7 Car & P 66, 173 Eng Reprint 30. . . ."

But the Minnesota court later in the opinion says that the facts in the case sufficiently show negligence on the part of the servants "in abandoning the duty imposed upon them by the master, and bring the case under the doctrine applied in Setterstrom v. Brainerd & N. M. R. Co. 89 Minn 262, 94 NW 882, which, indeed, seems really to be not different from the rule of Booth v. Mister and Althorf v. Wolfe." An examination, however, of the Setterstrom Case discloses that that was a case where the head brakeman of a train on the defendant's railway put a stranger in his place and the latter's neglect contributed to and was the cause of the resulting collision. The court in the syllabus, after stating the facts, said: "That whether the head brakeman was negligent in abandoning his post of duty and selecting a substitute to take his place was a question for the jury."

And in the opinion said: "We may not, upon the record before us, lay down any precise rule of duty that should have governed the jury in passing upon the relations of Hart's (head brakeman) acts to plaintiff's injury, for the trial court disposed of the case upon the theory that, no matter how negligent he was in putting another person in his place when he should have been there himself, without reference to the connection between such acts and the accident his conduct in that regard would not authorize a recovery. But we are very clear that the issue whether Hart was negligent was a question upon all the facts and circumstances attending his abandonment of his post of duty, and the putting of another person in his place without authority might have been a proximate cause of the injury, which should have been submitted under proper instructions, and the failure to do so makes it necessary that a new trial should be ordered."

An examination of the authorities which are cited as approving the doctrine of Booth v. Mister, discloses that often there is uncertainty as to the bases of their holdings and that, in many instances, the real ground is that there was negligence on the part of the servant in putting a stranger in his place.

In § 241, Vol. 1, of the Restatement of the Law of Agency, the rule is stated thus: "A master who has intrusted a servant with an instrumentality is subject to liability for harm caused by its negligent management by one to whom the servant intrusts its custody to serve the purposes of the master, if the servant should realize that there is an undue risk that such person will harm others by its management."

And in paragraphs d and e of the Comment under the section it is said:

"d. If the servant surrenders custody of an instrumentality in order that a private purpose of his own or of the one to whom he gives custody may be accomplished by its use, the master is not liable for subsequent injuries. In this case the situation is the same as if the servant were to use the instrumentality for his own purposes, except that the transfer of possession to another makes the departure from the employment more clearly marked.

"e. A servant, while remaining with the instrumentality, may surrender its immediate control to another, as where the driver of a truck permits a boy to drive it. Although such surrender is not negligent, the master remains subject to liability for any negligence of the employee in supervising the conduct of the other. However, in the absence of negligence by his servant the master is not liable for any casual negligence of the other while under the supervision of the servant."

On the facts in this case the jury may have returned their verdict under either of the theories on which they were charged in the instruction above referred to, so it is impossible to say under which they found for the plaintiff. Accordingly, I think there should be a reversal. See McLeod v. Simon, 51 ND 533, 200 NW 790.

Burke, J., concurs in the foregoing dissent.