Gordon LUSTY, Plaintiff and Appellant,

v.

Arthur OSTLIE, Defendant and Respondent.

No. 7500.

Supreme Court of North Dakota.

Aug. 29, 1955.

Day, Stokes, Valler & Gillig, Grand Forks, for appellant.

Nilles, Oehlert & Nilles, Fargo, for respondent.

GRIMSON, Judge.

Plaintiff brings this action to recover damages for the partial destruction of his automobile in a collision with a car owned by the defendant. It is alleged in the complaint that the collision was proximately caused by the negligence of the defendant. Defendant makes a general denial, admits the accident but alleges that it was caused solely by the carelessness, negligence and recklessness of Henry Ulvick, driver of the plaintiff's car. The case was tried to the jury. The jury found for the defendant for dismissal of the case. After the entry of judgment the plaintiff moved for a new trial on the grounds of the insufficiency of the evidence to sustain the verdict, which was denied. Plaintiff appeals from the judgment and from the order denying plaintiff's motion for a new trial.

The collision occurred at the intersection of two township highways in Lind Township, Grand Forks County, about five miles west of Northwood. Henry Ulvick, the proprietor of an automobile and implement business at Aneta, North Dakota, had borrowed the car of Gordon Lusty, his employee, for a trip to Grand Forks, leaving Aneta at about 1:15 p. m. on December 22, 1951. He had proceeded north on state highway 32 and east on state highway 15 at a speed of about 60 miles an hour until he turned north on the township highway, at a speed variously estimated by him at from 45 to 50, or 50 to 55 miles an hour. He traveled one mile on that highway to the intersection in question. He had traveled that highway many times before. The

defendant, Arthur Ostlie, was a farmer living about a quarter of a mile west of the intersection. He, with his daughter, had left his home after the noon meal that day taking the township road east to the intersection in question. He was well acquainted with both highways. He estimated his speed at from 15 to 20 miles per hour. The collision happened about 1:30 o'clock p. m.

The surface of both roads and the intersection was graveled. The roads were about 22 feet wide. A layer of packed snow covered the roads but they were in good condition. The weather was frosty but clear. The road leading south from the intersection rose gradually over a knoll and then slanted downward across a considerable depression so that a car in that depression could not be seen from the intersection or from the highway immediately west thereof until it reached the knoll 300 feet south of the intersection. Neither could a car approaching from the west be seen by the driver of a car coming across the depression from the south until he reached that point. Otherwise there were no obstructions to the view from the roads leading into the intersection.

The defendant, driving towards the intersection looked to the south, his right, 200 feet before he reached it but could see nothing. Then he looked to his left and proceeded without again looking to his right. He never saw the plaintiff's car until "it was heading into the intersection and everything went black." Ulvick, driving plaintiff's car came over the knoll without looking anywhere and failed to see defendant's car until it was about ten feet in front of him as he was about to enter the intersection. Both men were rendered unconscious and could not tell any more about the collision. Defendant's car was pushed northeast and upset into the ditch. The plaintiff's car was found in the ditch east of the north and south road. Photographs taken of the cars indicate that the rear, right side of plaintiff's car had been struck and that the left front of the defendant's car was pushed in. The description of the marks on the intersection by the patrolman

and witnesses arriving on the scene soon after the accident indicate that the collision happened in the intersection on the east side of the center line going north and the south side of the center line going east.

In the case at bar plaintiff, as bailor, loaned his car to Henry Ulvick as bailee. Ulvick was using that car for his own purposes and in no way in the interests of plaintiff. Under such circumstances any negligence of Henry Ulvick cannot be imputed to the plaintiff as contributory negligence. 9 Am.Jur., Automobiles, Sec. 493, p. 781, 6 Am.Jur., Bailments, Sec. 310, p. 407. In the A.L.I. Restatement of the Law on Torts, Sec. 489, p. 1272, it is said: "The contributory negligence of the bailee of a chattel does not bar the bailor from recovery." The bailee's negligence can only be considered on the question of whether such negligence was the sole contributing cause of the accident. If it was, then the defendant cannot be held responsible. If, however, the defendant, Ostlie's negligence contributed to that accident as a proximate cause thereof then he would be liable for resulting damages even if Ulvick's negligence also contributed to the collision. The district court fairly and fully charged to that effect and the case was tried on that theory without objection.

The sole issue involved in the appeal, therefore, is whether or not defendant, Ostlie, was guilty of negligence which proximately caused or contributed to the accident and the plaintiff's resulting damage, irrespective of any negligence on the part of Ulvick. As specifications, plaintiff alleges that the evidence is insufficient to support the verdict; that under the evidence the defendant, Arthur Ostlie, is guilty as a matter of law of negligence which was a proximate cause of the damages resulting to the plaintiff, and that the court, therefore, erred in ordering judgment of dismissal of plaintiff's case and in denying plaintiff's motion for a new trial.

The plaintiff argues two grounds in support of his objections. One is to the effect that the defendant violated the right-of-way rule provided by Sec. 39–1017, NRDC 1943, in entering the intersection and was, therefore, guilty of negligence. The other is that he failed to keep the proper lookout in not looking to his right during the last 200 feet of travel before entering the intersection, and was, therefore, guilty of negligence as a matter of law. On these grounds the plaintiff contends the judgment should be set aside and he given a new trial.

Questions of negligence and of proximate cause are ordinarily questions for the jury. They become questions of law only when the state of the record is such that reasonable men can draw but one conclusion therefrom. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191; Leonard v. North Dakota Co-op. Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576; Fagerlund v. Jensen, 74 N.D. 766, 24 N.W.2d 816.

We must, therefore, review the evidence bearing on the two points raised by plaintiff.

Sec. 39–1017, subds. 1, 3, NDRC 1943 provides: "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right * * *. The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he otherwise might have under the provisions of this subsection; 3. The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection." These sections have been construed by this court in Knudsen v. Arendt, N.D., 56 N.W.2d 340, 341, 343, as follows:

"It is clear that subsection 1 of Section 39–1017, NDRC 1943, applies to all cases in which vehicles approach the intersection at approximately the same time. Vehicles approach an intersection at approximately the same time when there is imminent danger of

collision at some point within the intersection if each maintains its established course and speed. Blashfield Cyc. of Automobile Law, § 993, n. 28 (Perm. ed. 1951); Fester v. George, 71 S.D. 424, 25 N.W.2d 455; Gendron v. Glidden, 84 N.H. 162, 148 A. 461; Prato v. Coffey, 135 Conn. 445, 66 A.2d 113; Mattfeld v. Nester, 226 Minn. 106, 32 N.W.2d 291, 3 A.L.R.2d 909. The words, 'at approximately the same time' do not mean 'at precisely the same instant' and in order for a vehicle entering an intersection from the left to secure a right of way by possession under subsection 3 of Section 39–1017, NDRC 1943, it must enter the intersection a sufficient interval of time ahead of a vehicle approaching from the right, so that it may be said the vehicles did not enter at approximately the same time. Such an interval must be of appreciable duration."

In the case of Moore v. Kujath, 225 Minn. 107, 29 N.W.2d 883, 175 A.L.R. 1007, the Minnesota court came to the same conclusion but added that all the surrounding circumstances must be considered in determining which car had the right of way.

■ In the instant case the evidence clearly indicates that defendant's car coming from the left entered the intersection first, but that of itself did not give him the right of way, if another car was approaching from the right at approximately the same time. If the plaintiff's car, coming from the right, traveling at legal speed entered the intersection before defendant got through it plaintiff's car would have the right of way. Then defendant's entry into the intersection would be a violation of the law and an act of negligence. Defendant, however, had the right to assume that the driver of any other car coming from the right would exercise due caution and would obey the rules and regulations applying in such cases. Both the defendant and Ulvick knew of the knoll 300 feet south of the intersection and of the depression on the south side of the knoll. Defendant was entitled to assume that a driver coming over that hill, which would obstruct his view until he was within 300 feet of the intersection, would drive at the legal speed, have his car under control and keep the proper lookout on approaching the intersection.

In Pederson v. O'Rourke, 54 N.D. 428, 209 N.W. 798, this court held: "The driver of a vehicle approaching a street intersection has the right to assume that others likewise approaching the intersection will observe the rules of the road and to act upon that assumption in proceeding across the intersection." See also 2 Blashfield's Cyc. of Automobile Law and Practice. Sec. 1026, p. 290.

The evidence shows that Ulvick came over that knoll without looking either to the right or left. He says he did not see the defendant's car until it was in front of him only ten feet away.

■ There were no signs of limitations in regard to speed placed upon the township highway Ulvick was traveling. The general speed limit of 50 miles an hour, therefore, applied. Section 39–0902, subd. 8, 1949 Suppl. NDRC 1943. Ulvick had been traveling 60 miles an hour until he turned over on that highway. He testified he thought that was the speed limit but said he lowered his speed upon taking the township highway. His first statement to the patrolman, and which was included in the statement he signed shortly after the accident, was that he was then traveling 50 to 55 miles per hour. If the jury found, as they could, that Ulvick was exceeding the speed limit he lost his right of way. Section 39–1017, supra. Logan v. Schjeldahl, 66 N.D. 152, 262 N.W. 463; and defendant's entry into the intersection could not be considered as evidence of negligence just because of such entry. See Pederson v. O'Rourke, supra.

■ In considering a specification that a verdict is contrary to the evidence the court will assume the truth of the version of the evidence which tends to support the verdict. Froh v. Hein, 76 N.D. 701, 39 N.W. 2d 11; Jacobs v. Nelson, 67 N.D. 27, 268

N.W. 873; Moore v. Kujath, 225 Minn. 107, 29 N.W.2d 883, 175 A.L.R. 1007.

Plaintiff cites the case of Knudsen v. Arendt, supra, Zettle v. Lutovsky, 72 N.D. 331, 7 N.W.2d 180, and Braaten v. Grabinzki, 77 N.D. 422, 43 N.W.2d 38, in support of his contention that defendant's entry into the intersection at approximately the same time as a car from the right, constitutes negligence as a matter of law. While in each of these cases the defendant was found negligent as a matter of law because he did not look to his right, the facts differ from the case at bar. In the Knudsen case each driver had an unobstructed view of the other for at least one-fourth of a mile before entering the intersection. If the defendant did not look and see the plaintiff's visible car he was negligent and if he looked and saw it and still continued into the intersection he was negligent. Similarly in the Zettle case each driver had a clear and unlimited view of the highway over which the other was traveling for a considerable distance before entering the intersection. In the Braaten case both drivers had a clear view and saw each other before entering the intersection. In none of these cases was there any evidence of either party exceeding the speed limit. Plaintiff also cites several Minnesota cases but it appears that the holding in those cases that the mere failure on the part of one who looks and does not see that which is in plain sight and which he might have seen does not in itself make him guilty of contributory negligence as a matter of law *without regard to surrounding circumstances.* Moore v. Kujath, supra. In the Moore case each party had a view of the other without obstruction and under the circumstances defendant was held guilty of negligence as a matter of law.

■ On the matter of defendant's failure to look to his right during the last 200 feet before the intersection the evidence shows that he had looked when 200 feet from the intersection but Ulvick's car was then in the hollow of the depression and he could not see it. Assuming that defendant was traveling at the rate of 20 miles an hour, the highest speed he claimed, he would be traveling 29 feet per second. It would, therefore, take him approximately 7 seconds to travel those 200 feet. Assuming again that Ulvick was traveling 55 miles an hour he would be traveling slightly over 80 feet per second he would not become visible to the defendant until he got to the top of the knoll 300 feet south of the intersection. To travel that distance would take Ulvick 3.73 seconds. That would mean that in order to see Ulvick's car coming defendant would have had to again look to his right during the last four seconds prior to entering the intersection. Had he looked the second time any time prior to that he still would see no car as Ulvick until then was behind the knoll. Considering that he had looked 7 seconds before and found everything clear and considering that he could expect any car coming over the hill to observe due caution, maintaining legal speed and control of his car, could it be said as a matter of law that defendant was negligent? On that reasonable men might differ.

"If the undisputed facts are of such a nature that reasonable men might draw different conclusions or deductions therefrom, then the question of negligence must be submitted to the jury." Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873, 876, and cases cited.

In Lundgren v. Converse, 34 Cal.App.2d 445, 93 P.2d 819, 820, the Court says:

"It appears from his testimony that respondent did in fact look to the right before entering the intersection and observed no approaching car within the range of his vision, a distance of 80 feet. Whether it was reasonably prudent for him to proceed at a slow rate of speed across the intersection was a question of fact for the determination of the jury."

"A motorist who fails to look on entering an intersection is generally negligent as a matter of law, *but if his*

*view in a particular direction is obstructed, his failure to look in that direction presents a question for the jury, as does his failure to look more than once."* 10 Blashfield's Cyc. of Automobile Law and Practice, 6619, p. 24. (Emphasis supplied.)

From the evidence in this case, reasonable men may draw different conclusions as to whether or not defendant was entitled to the right of way and whether or not he was negligent in entering the intersection without looking the second time to his right under all the circumstances of the case. Therefore the question of defendant's negligence or contributory negligence were questions for the jury.

The judgment and order of the district court denying a new trial are affirmed.

BURKE, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur