HENRY OVERHOUSER, Administrator, Appellant, v. AMERI-
CAN CEREAL COMPANY *et al*, Appellees.

Personal Injury; LIABILITY OF MASTER OR SERVANT: QUESTION FOR
1   JURY.   To determine a liability as between master and ser-
vant, the proper test is whether the employe represents the
master as to the result of the work or only the means em-
ployed, and is a question for the jury.

Same; VIOLATION OF ORDINANCE: ADMISSIBILITY OF. . In an action
2   to recover for a personal injury caused by an obstruction placed
in the street in violation of a city ordinance, it is error to re-
fuse to admit the ordinance in evidence.

Same; NEGLIGENCE: QUESTION FOR JURY. Whether the scatter-
3   ing of dirt and stone along the street of a city was reasonably
incident to the work being done, or the result of an indifferent
and negligent manner of doing it, is a question for the jury.

Evidence: ORDINARY CARE: QUESTION FOR JURY: Where a bicycle
4   rider struck a stone in the street and lost his balance and be-
fore he regained it, struck another stone and was thrown and
killed, the question whether in the exercise of ordinary care
he should have seen and avoided the latter stone, was for the
jury to decide.

Same; NEGLIGENCE: SPEED.   Deceased was not negligent in rid-
5   ing along the street, though he knew stones were scattered
therein; nor, as a matter of law, was he negligent in riding at
the rate of seven miles an hour.

*Appeal from Linn District Court.*—HON. W. G. THOMPSON,
Judge.

THURSDAY, OCTOBER 30, 1902.

ACTION for damages.   Judgment was entered for de-
fendants on a directed verdict, and plaintiff appeals.—
*Reversed.*

*Jamison & Smyth* for appellant.

*Powell & Harmon* and *Hubbard, Dawley & Wheeler*
for appellees.

LADD, C. J.—About the 19th day of November, 1899, a cellar was being excavated in a lot belonging to the American Cereal Company. The material taken therefrom, consisting of dirt and rock, was hauled about three blocks distant across the Cedar river, and dumped between it and First street of Cedar Rapids. The street was paved with brick a width of about thirty feet between the curbings. A crossing of dirt over the curbing was made near its intersection with F avenue, another to the south about half way to E avenue, and, another used at B avenue, where there was no curbing. Stone and earth dropped from the loads in going over the crossings and in coming back; also, in driving along the street, stone which had caught on the hounds and reaches of the wagons fell off. The evidence tended to show that rocks were thus scattered the entire distance from F to E avenue from the curbing out some twenty feet to the east, though thickest near the curbing. About twenty-five teams were engaged in the work, and hauled an average of fifteen loads a day each. The deceased was riding a bicycle home from his work shortly after 12 o'clock, along First street, when the front wheel struck a small stone about the size of a goose egg, throwing his feet from the pedals, and, before he could regain control, swerved, and ran against a larger stone, when he was thrown so that he fell upon his back, and never regained consciousness.

I. A. H. Connor & Co. had an oral contract with the American Cereal Company to do such work as it might require in the manner following: Connor & Co. bought

1. LIABILITY of master or servant: jury question.

all material, employed all help, had charge of the work, and paid the bills. The account was presented to the cereal company at the end of each week, and the firm reimbursed on Saturday the week following for what it had expended, and allowed five per cent. on the amount for services rendered. When

dirt was excavated, Connor & Co. disposed of it, and accounted for the proceeds. The evidence tended to show that the cereal company gave no direction as to the men or teams to be employed, nor the machinery to be used, and that Connor & Co. determined the method to be adopted in making any particular improvement. With respect to this particular job, Connor testified: "In the mean time they had bought this ground, and there was excavation done, and there is still a large hole in the ground without any building there. They ordered us to do it,—to take it out,—and we took it. We didn't know what it was for. * * * They told us to get that excavating done. Q And you used your own judgment as to the means of doing it, and how to do it, and the employment of teams, did you not? A. Of course, we did that part of it as we thought best" From this and other evidence introduced the jury might have found that, in respect to the means employed to perform work required of the firm, it was entirely independent of the control of the cereal company. It might interrupt the work, or change the plans, but in carrying these out the jury may have found such means were adopted as were selected by Connor & Co. independent of the wishes of the cereal company; that Connor & Co. were to accomplish a certain result according to their own methods, without being subject to the control of the cereal company, save as to the result. See *Humpton v. Unterkircher*, 97 Iowa, 514; 16 Am. & Eng. Enc. Law (2d Ed.) 191. The test oftenest resorted to in such cases is the ascertainment of whether the employe represents the master as to the result of the work or only as to the means. If only as to the result, and in the employment of the means he acts entirely independent of the master, he must be regarded as an independent contractor. Without discussing it in detail, we think the evidence such as that this issue should have been submitted to the jury.

II.  Contrary to appellees' contention, the evidence tends to show not only that rocks were dropped in the street from wagons in the defendants' service, but the particular stone last struck was identified as having come from the excavation; and as one witness declared that "these stones that were on the street were stones that we left on the hounds and reaches of the wagons, and when we would come out they would come off," the jury might have found that the small stone came from the same source.

III.  It may be, as contended, that the city was required to keep its streets in a reasonably safe condition for travelers with horses, teams, and carriages, and no care in

2. VIOLATION of ordinance: admissibility of.

addition thereto was exacted for its use by bicycle riders.  See *Wheeler v. City of Boone*, 108 Iowa, 238; *Lee v. City of Port Huron* (Mich.) 87 N. W. Rep. 637, 55 L. R. A. 308; *Leslie v. City of Grand Rapids* (Mich.) 78 N. W. Rep. 885; *Richardson v. Inhabitants of Danvers*, 176 Mass. 413 (57 N. E. Rep. 688, 50 L. R. A. 127, 79 Am. St. Rep. 320).  In the last case it was said that: "A bicycle is of but little use in wet weather or on frozen ground.  Its great value consists in the pneumatic tire; but this is easily punctured, and no one who uses a wheel thinks of taking a ride of any distance without taking his kit of tools with him.  A hard rut, a sharp stone, a bit of coal or glass, or a tack in the road may cause the tire to be punctured, and this may cause the rider to fall, and sustain an injury.  It would impose an intolerable burden upon towns to hold them to keep their roads in such a state of repair and smoothness that a bicycle could go over them with assured safety."  But a municipality has the authority to care for its streets, keep them free from rubbish, and to prohibit stone or other material from being thrown therein.  Section 753, Code.  Hence the ordinance punishing "whoever shall within the limits of the city in any way obstruct or cause to be obstructed any street * * * by placing therein

or thereon any stone" should have been received in evi-. dence. To "obstruct" does not · necessarily mean to "render impassable." As here used the word evidently means to place an obstacle in the way, or an impediment, which will interfere with the free passage along the street. The extent of the obstruction is not defined. If an obst- acle obstructs in any way, it is within the prohibition. Appellees insist, however, that the rock in question were dropped in the street as a mere incident to its ordinary use. See Dillon, Municipal Corporation (3d Ed.) section 730. Undoubtedly, the defendants were not amenable to the penalty of the ordinance if no more stone fell from the wagons than might reason- ably be expected in performing the work in a prudent manner, and these were not allowed to remain an unreasonable length of time. But stone, according to some of the witnesses, were scattered two-thirds of the width of the street and a block in length, and those out any considerable distance from the curbing might have been found to have been carried there on the hounds and reaches of the wagons after being unloaded. Whether all this was reasonably incident to the work being done, or the result of the indifferent and negligent manner of doing it by the teamsters, was for the jury to determine. See, *Flynn v. Taylor*, 127 N. Y. 596 (28 N. E. Rep. 418, 14 L. R. A. 556.

3. SAME: neg-ligence: jury question.

IV. The evidence tended to show that the bicycle struck the small stone near the middle of the street. This threw the feet of deceased from the pedals, and the vehicle swerved to the right, the front wheel swinging one way and another until it struck the large stone about four or five feet from the curbing, when he was thrown off. The appellees, assuming there to be no evidence that the small stone came from the excavation, argue that it, and not the large stone, was the proximate cause of the injury. They rely

4. EVIDENCE: ordinary care: jury question.

on a class of cases deciding that where a horse, becoming
frightened without fault of the city, runs away, and the
driver, wholly losing control, is injured by a defect in the
street, the fright of the horse, and not the defect in the
street, is the proximate cause.    See, *Ritger v. City of
Milwaukee* (Wis.) 74 N. W. Rep. 815; *Higgins v. City of
Boston*, 148 Mass. 484 (29 N. E. Rep. 105).    But such is
not the accepted doctrine in this state, nor do we think it
sustained by the weight of authority.    The better rule, as
we have held repeatedly in similar cases, is that the city
may be liable under such circumstances if the injury
would not have been sustained but for the defect in the
street.    *Gould v. Shermer*, 101 Iowa, 532; *Walrod v. Web-
ster County*, 110 Iowa, 349; *Harvey v. City of Clarinda*,
111 Iowa, 532.    See *Ring v. City of Cohoes*, 77 N. Y. 83
(33 Am. St. Rep. 574); Elliott, Roads & S. 448; Beach,
Contributory Negligence (2d Ed) section 245.    Of course,
there must be evidence from which it may be fairly found
that the injury might have been avoided but for the de-
fect, and we think the bare statement of facts sufficient to
show that such a conclusion was open to the jury.    Un-
doubtedly deceased had lost temporary · control of his
bicycle, but, as the front wheel was swinging one way and
then another, he must have been attempting to regain his
balance.    Whether he might have done so had no stone
been in the way cannot be certainly known.    He had rid-
den a considerable distance without falling, and he may
have remained on until the speed had so far decreased
that he could have alighted with safety, or gone on his
way.    That a curbing or telegraph pole was near by does
not prove that he would have struck one of these if not
the stone.    These are the things he would first have seen,
and attempted to avoid.    The wheel did strike the stone,
with a result rarely to be anticipated, and it was for the
jury to say whether, but for it being in the street, he
would have been thrown to the ground, and lost his life.

True, he had been riding back and forth from his work along this street, and probably knew in a general way rock were being hauled, and that some of them had dropped in the street. But for this reason he was not required to abandon the way. A stone as small as a goose egg, if the color of the pavement, might not readily have been noticed. Whether, in the exercise of ordinary care, he should have seen and avoided it was for the jury to decide.

V. At most, the evidence is in conflict as to whether deceased was riding at a fast or immoderate rate of speed, in violation of the city ordinance. Indeed, the ordinary velocity is not shown, and would be difficult to determine. This must, of necessity, depend on the character of the street, and the extent of travel. Certainly, a rate of seven miles an hour, as estimated by Daily, cannot be declared, as a matter of law, fast or immoderate.

VI. This is not a suit against the city, nor based on any negligence necessarily attributable to it. The charge is that defendants, through their employes, left rock in the street, in violation of an ordinance, and, as a result, deceased, without his fault, was thrown from his bicycle and injured. In violating the terms of the ordinance, the defendants, if they so did, were negligent, and, if this was the proximate cause of Overhouser's death, we know of no reason for denying liability.—REVERSED.