## EDWARD SOLBERG v. GEORGE SCHLOSSER.

(30 L.R.A.(N.S.) 1111, 127 N. W. 91.)

**Negligence — Defective Highways — Degree of Care of User.**

1. It is not negligence, as a matter of law, for a person to drive upon a dangerous or defective highway, knowing it to be such, unless the dangerous or defective condition is such that a person of ordinary prudence would not attempt to drive over it.

**Same.**

2. Knowledge of the dangerous condition of a highway, however, imposes a duty upon a traveler to exercise such care as the circumstances demand.

---

Note.—That the rule stated in SOLBERG v. SCHLOSSER, that it is not *per se* negligent to use a highway known to be defective, if it is not so dangerous that no prudent person would attempt to use it, is the general rule universally applied, as shown by a review of the authorities in an elaborate note in 21 L.R.A.(N.S.) 614, in which the whole question of contributory negligence as affecting liability for defects and obstructions in streets is considered. This note assumes the existence of a defect or obstruction sufficient to impose liability, and considers only the effect on that liability of the contributory negligence of the person injured; while the question of the municipality's liability for creating or permitting defects or obstructions is treated at length in another note in 20 L.R.A.(N.S.) 513.

The question of liability for the act of an independent contractor affecting the safety of highways is treated in notes in 66 L.R.A. 126, and 17 L.R.A.(N.S.) 758, while the question, "Who are independent contractors," is the subject of a note in 65 L.R.A. 447.

As to law of streets and highways generally, see note to Heckman v. Evenson, 7 N. D. 173.

**Defective Highways — Question for Jury.**

3. In case of conflict in the evidence as to the condition of a highway at a point where it is claimed to have been dangerous for travel, it is a question for the jury to determine whether it was dangerous or not.

**Negligence — Contributory Negligence — Question for Jury.**

4. Where the evidence is such that different persons may reasonably reach different conclusions, the question of the negligence of the defendant and of the contributory negligence of the plaintiff is for the jury.

**Pleading — Contract or Tort.**

5. The complaint considered and held to set forth a cause of action for a violation of a duty not to render a highway dangerous by placing and leaving dirt thereon in a negligent manner, and not to state a cause of action on a breach of contract.

**Master and Servant — Independent Contractor — Contract with Drainage Board.**

6. A person contracting with a drainage board to construct a drain under plans and specifications where he has sole control of the work, and the board has no control or superintendence thereof, is an independent contractor, and not the agent of the board.

**Highways — Obstruction — Liability for Damage.**

7. Any person who wrongfully renders a public highway dangerous for travel by placing obstructions thereon must respond in damages to anyone injured in consequence of such obstruction.

Opinion filed May 14, 1910. Rehearing denied June 18, 1910.

Appeal from the District Court of Traill county; *Pollock*, J.

Action for damages caused by a defective highway. Verdict and judgment for plaintiff. Defendant appeals.

Affirmed.

*Skulason & Burtness*, for appellant.

*P. G. Swenson*, for respondent.

MORGAN, Ch. J.   Action for damages caused by defects in a highway through the alleged negligence of the defendant. The controlling facts are included in the following summary: In October and November, 1907, the defendant was engaged in constructing a drain in Traill county, under a contract with the county drainage board of said county. The drain was to be constructed in accordance with plans and specifications which were made a part of the contract. The drain extended

nearly north and south, and intersected a highway running east and west at the point where the injury occurred. At the point of intersection with the highway, a bridge had been built over the drain by the public authorities. The drain was about 11 feet deep at the bridge. The dirt from excavating the drain was dumped on the highway. The dirt was dumped on the highway at the east approach to the bridge, and to about 45 feet from the bridge.

The allegation of the complaint in reference to the condition of the highway at this point is as follows: "That between the 20th day of October, 1907, and the 10th day of November, 1907, the defendant, while engaged in excavating said ditch or drain, placed and deposited a large quantity of dirt scraped out of said ditch, in the roadbed of the public highway running east and west between said sections 5 and 8, and at a point where said highway crosses the said ditch near the southwest corner of section 5, in said township and range; that the defendant wholly failed and neglected to level down said dirt so placed in the roadbed of said highway, but left the same in an extremely rough and uneven condition, the dirt being deposited in mounds which had frozen solid, leaving depressions and holes in said road which rendered said public highway extremely unsafe and dangerous for public travel; that the defendant carelessly and negligently allowed the said dirt to remain in said highway and that portion thereof used by the public in traveling, without leveling or smoothing down the same; that the depressions or holes in said highway made by depositing dirt from said ditch were from 12 to 18 inches in depth, and the said highway at said point was carelessly and negligently allowed by defendant to remain in said condition, causing the said highway at that point to be dangerous and unsafe for public travel."

The complaint further alleges that on the 23d day of November, 1907, the plaintiff was driving along said highway in the exercise of due care, and was driving in the ordinary way, at a slow speed, and, while driving in that manner, one of the wheels of said wagon ran into a depression in said highway and partially overturned said wagon, and the plaintiff was thrown to the ground and injured, and was damaged in the sum of $5,000.

The answer is, in fact, general denial. The issues were submitted to a jury, and a verdict was found in favor of the plaintiff for the sum

of $1,000 and interest from the date of the injury. A motion for a new trial was made and denied. Judgment was entered on the verdict. The defendant appeals from this judgment, and presents the following contentions as a basis for the reversal of the judgment:

1. No privity of contract existed between the plaintiff and the defendant, therefore no duty was imposed upon the defendant to place the highway in proper condition.

2. The drainage board would not be liable for damages, as it was engaged in the performance of work of a public nature, as a state agency, therefore the defendant would not be liable for damages while engaged in that work as the agent of the drainage board.

3. The evidence fails to show that the highway was unsafe at that particular place at the time of the injury, and fails to show that the defendant ever caused it to become unsafe or dangerous for travelers.

4. The defendant was under no duty or obligation to keep the road in proper condition for travel, and his acts were not the proximate cause of the injury, and at most only the remote cause.

5. The plaintiff was guilty of negligence that contributed to the injury.

No exception was taken to the instructions to the jury, nor to the admission or rejection of evidence. The appellant's contentions are that the evidence does not justify a judgment in plaintiff's favor for the foregoing reasons. We will consider these questions in the order named.

The defendant claims that the action is one for damages growing out of a breach of a contract between the defendant and the drainage board, and that damages growing out of the failure on defendant's part to comply with the contract, cannot be recovered by the plaintiff, as he was not a party to that contract. In other words, no privity of contract existed between the plaintiff and the defendant.

We do not agree with the defendant's contention as to the cause of action set forth in the complaint. It is not a cause of action for damages growing out of a breach of contract. It is one for damages growing out of the defendant's tort in rendering the highway dangerous through his negligence in leaving the dirt thereon in piles, and not leveled off. The contract is not set forth in the complaint nor mentioned therein. It was not offered in evidence by the plaintiff, but by

the defendant. It is true, the complaint contains an allegation to the effect "that, in doing the work of excavating the said ditch or drain at the time hereinafter mentioned, the defendant placed and deposited a portion of the dirt taken from said ditch or drain in the roadbed of the public highway running east and west along the section line between section 5 and 8, in said township and range: that it was defendant's duty, when such dirt had been placed in the roadbed of said highway, to level down the dirt so placed there, so as to make a smooth and good road for public travel." Defendant contends that this clause shows that plaintiff claims damages for a breach of duty under the contract. We do not think that this contention can be upheld. There is no other fact or conclusion alleged in the complaint from which the inference that this refers to a duty arising from the contract can be drawn. The statement that defendant owed a duty to level the dirt, after placing it on the highway, harmonizes with what is a legal duty devolving upon every one not to obstruct or make the highway dangerous for travel. From the whole complaint, our conclusion is that the duty mentioned in this allegation of the complaint refers to a duty imposed by law, and not to the contract referred to in the evidence. Defendant relies upon Styles v. F. R. Long Co. 67 N. J. L. 413, 51 Atl. 710, as sustaining his contention in this regard. In that case it was held that the plaintiff was not entitled to bring the action for damages under the contract between the defendant and the board of chosen freeholders of the county of Passaic. In that case the following statement of the law in Appleby v. State, 45 N. J. Law, 165, was approved: "A duty, the breach of which is an actionable wrong, may arise from a contract, or be imposed by positive law, independent of contract. In the first case, the party to the contract only can sue; in the other case, any person injured may sue if he be one of the class of persons for whose benefit the duty is imposed."

The same principle was subsequently announced by the same court in the same case, reported in 70 N. J. L. 301, 57 Atl. 448. This case is therefore not in point, as the cause of action was based upon a contract alone. In this case, although there existed a contract between the drainage board and the defendant, still the liability as pleaded does not depend on the contract, but arises out of a legal duty devolving upon the defendant, as well as the public in general, not to obstruct or make the

highway dangerous for travel. Such a duty, being to the public generally, may be enforced by anyone, if damages occur on account of the failure to perform that duty. The liability in this case arises by reason of the fact that the defendant negligently placed a nuisance in the highway, which rendered it dangerous for travel, and a violation of § 6641, Rev. Codes 1905. Inasmuch as the liability pleaded is not based upon a contract, it is not necessary for us to determine whether there was a breach of the contract in this case.

In support of our conclusion that the complaint in this case properly alleged a cause of action growing out of a breach of duty on the part of the defendant, see Nye v. Dibley, 88 Minn. 465, 93 N. W. 524; Elzig v. Bales, 135 Iowa, 208, 112 N. W. 540.

In Evansville & T. H. R. Co. v. Crist, 116 Ind. 446, 2 L.R.A. 450, 9 Am. St. Rep. 865, 19 N. E. 310, the court said: "The right to interfere with a highway is coupled with the duty to make it as safe as it was before it was disturbed, or, at least, to use reasonable care and skill to do so. This duty is violated if there is a failure to restore it to its former condition in all cases where the exercise of reasonable care and skill can effect a restoration."

The defendant also urges that he was engaged in excavating the drain as the agent of the drainage board, and contends that no liability can be upheld against him as agent, as his principal would not be liable as a matter of law. So far as this case is concerned, it is immaterial whether the drainage board could be held for damages or not, as it clearly appears that the relation of principal and agent did not exist between the defendant and the drainage board by virtue of the contract. A reading of that contract shows that the defendant independently contracted to dig the drain in accordance with plans and specifications which were made a part of the contract. The drainage board exercised no control or supervision over the work or over the defendant while engaged in doing the work. Under the contract the drainage board reserved the right to terminate the contract in case the work was not being done in accordance with the plans and specifications, and the right to cause the drain to be completed by someone else in case the defendant failed to perform the contract. In the following cases, closely similar so far as the facts are concerned, the relation between the parties was held not to be that of principal and

agent: Atkins v. Field, 89 Me. 281, 56 Am. St. Rep. 424, 36 Atl. 375; Hilsdorf v. St. Louis, 45 Mo. 94, 100 Am. Dec. 352; Bennett v. Mt. Vernon, 124 Iowa, 537, 100 N. W. 349; Herrington v. Lansingburgh, 110 N. Y. 145, 6 Am. St. Rep. 348, 17 N. E. 728; Shute v. Princeton Twp. 58 Minn. 337, 59 N. W. 1050; see also 16 Am. & Eng. Enc. Law, 2d ed. p. 187.

The cases cited by the defendant are not in point, as the principals in those cases reserved authority, in themselves, while the work was being done.

It is next claimed that no negligence was shown on appellant's part. The question of his negligence was submitted to the jury under instructions which were not excepted to. It cannot be maintained or claimed as a matter of law, that no negligence was shown, or that contributory negligence was shown, as the testimony on that question is in conflict. In other words, there was such conflict in the testimony that rendered the question of negligence one for the jury. As to the condition of the road before and after placing and leaving of the dirt thereon, the witnesses differ in their testimony. The condition of the road is variously described. Some of the witnesses described it as "pretty rough," as "hilly and uneven," and as having "high and low places." Another witness states that he had extreme difficulty in driving over this road in safety about this time. The dirt from the drain was taken therefrom in scrapers and dumped on the road, and left in piles, and it was wet, and became hard by reason of becoming frozen. Some of the depressions or low places at this point were 8 or 10 inches deep. Before dumping the dirt there, the road was smooth and even, and there was no drop from the road to the bridge. After placing the dirt there, there was a drop of about 10 inches from the road to the bridge.

From this evidence we deem it too clear for debate or question that the verdict cannot be disturbed so far as the dangerous condition of road is concerned, and that this condition was caused by the defendant is also settled by the verdict, and cannot be disturbed for the same reason. As to both grounds the verdict is amply sustained.

The evidence is not definite as to the precise point on the road where the depression was that caused the load to tumble over. The trial court, at appellant's request, submitted a special question of fact to the jury bearing on this question, which was as follows: "Were both right-

hand wheels of the wagon on the bridge when the wagon upset ?" The jury answered "No." Appellant now contends that this finding is not sustained by the evidence. There are facts which tend to indicate that a contrary finding might be justified. None of the witnesses, however, saw the wagon when it tipped over. Plaintiff is therefore better enabled to know what the truth was in this regard. His evidence shows that the wagon tipped over just as the right front wheel went on the bridge. The road and bridge were not at right angles with each other at this point; hence, one front wheel struck the bridge before the other did. The sudden drop from the road to the bridge would naturally cause the team and wagon to move ahead to some extent, after the load commenced to tip, or even after the plaintiff was thrown, with the straw, into the ditch.

The plaintiff also testifies that the right hind wheel went into one of these depressions, and right after that fact, the front wheel came upon the bridge and dropped, and caused the load to tip over. Whereas the testimony is contradictory as to where the wagon was after the accident happened, in reference to whether it was all on the bridge or not, it is beyond dispute that the cause of the tipping over of the wagon was a defect on the highway, which was struck just before the wagon went upon the bridge. We think the finding is sustained by the evidence, which shows that the wagon did not tip over after the two right-hand wheels were on the bridge, and that these wheels were not on the bridge when the plaintiff was thrown from the load, and this evidence is not necessarily inconsistent with the evidence that the wagon was wholly on the bridge when the witnesses first saw it after the accident.

It is forcibly urged that the plaintiff was guilty of contributory negligence that should defeat his right to recover damages. His testimony is not clear, and in some respects is contradictory, but the question of contributory negligence was submitted to the jury under instructions not objected to. He was driving on a wagon on which was a load of flax straw, 8 feet high, which was loaded in the usual manner. The alleged contributory negligence is based on the fact that the plaintiff drove over this rough road, knowing its dangerous condition. In other words, he testifies that he observed the rough condition of the road a long distance before he reached the bridge where the injury occurred, and drove over the same, notwithstanding that fact. His explanation for driving over

this rough road after seeing it, is that he could not turn around or otherwise avoid going over it after he saw it. The plaintiff was endeavoring to follow the tracks of those who had driven over this same road about this time. The evidence shows that he exercised the greatest care in driving the team.

It seems to be well sustained by the authorities that it was not incumbent upon him to stop and forego using the road because it looked rough or dangerous. In Elliott on Roads and Streets, 2d ed. § 636, the rule is stated as follows: "The fact that a traveler voluntarily attempts to pass, with knowledge of the defect or obstruction, is not ordinarily conclusive evidence of a want of due care, but if he has or ought to have notice thereof, he must exercise such care as the circumstances demand, and if an ordinarily prudent person would not attempt to pass, under the circumstances, he will be guilty of contributory negligence."

In McTiver v. Grant Twp. 131 Mich. 456, 91 N. W. 736, the court said: "But the true test is, Was the danger arising from the known defect obviously of such a character that no person in the exercise of ordinary prudence would attempt to pass over the highway at that point? If not, it is not negligence, as matter of law, for one to attempt to pass over a highway known to be defective."

In Evansville & T. H. R. Co. v. Crist, 116 Ind. 446, 2 L.R.A. 450, 9 Am. St. Rep. 865, 19 N. E. 310, the court said: "If it were granted that the plaintiff had knowledge that she would be exposed to some danger in attempting to ride along the highway made unsafe by the defendant's wrong, that fact, of itself, would not, in such a case as this, necessarily preclude a recovery. Knowledge is not always a bar to a recovery. It is not a bar in such a case as the present, for the plaintiff was not bound to refrain entirely from using the only highway which gave her access to her home or led from it. . . . It is quite clear it cannot be said in this case that the danger was one which the plaintiff was bound to shun, or assume, at her own peril, all the risk attending the attempt to pass it. The case is not one of a plaintiff casting himself upon a known danger which a prudent person would not have encountered." See also Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Ouverson v. Grafton, 5 N. D. 281, 65 N. W. 676; Overhouser v. American Cereal Co. 118 Iowa, 417, 92 N. W. 74.

Whether defendant was guilty of negligence was clearly a question for the jury, in this case, as in all cases, unless the evidence is so clear that reasonable men would not reach a different conclusion therefrom. The same is true as to the question of the contributory negligence of the plaintiff. This court has recently considered these questions with the result stated above. Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830.

It is further claimed that the board of drain commissioners should be held responsible, and not the defendant. The commissioners are not shown to have done, or caused to be done, any act that caused the injury. What the board authorized the defendant to do in reference to placing the dirt on the highway and leveling it, was not unlawful or prohibited, and could not render the highway dangerous to travelers; therefore no cause of action for violation of any duty is shown against the board.

This disposes of each assignment. It follows that the judgment must be affirmed, and it is so ordered. All concur.