TERRY SAYRE, by MARVIN SAYRE, father and next friend, appellant, v. WAYNE ANDREWS, appellee.

No. 52044.

932

November 15, 1966.

Jones, Cambridge, Carl & Howard, of Atlantic, for appellant.

Don Carlos & Don Carlos, of Greenfield, for appellee.

MASON, J.—This action at law seeks damages from third-party motorist for personal injuries sustained by minor plaintiff in an accident wherein the automobile in which he was riding went into a ditch about a quarter mile south of Atlantic on the Chestnut Street road, allegedly as a result of third party's negligence.

Plaintiff, age 18, received serious personal injuries alleged to be permanent. He claims recovery for impairment of earning capacity, past and future pain and suffering, hospital and medical expenses past and future.

At the close of plaintiff's evidence, defendant's motion for directed verdict was sustained. From judgment thereon, plaintiff appeals.

I. The accident occurred about 9:15 p.m. December 26, 1963. It was dark but not pitch black. The weather was cool and clear and the roadway was clear.

Chestnut Street road, herein referred to as Chestnut, is a paved highway 23 feet in width running approximately north and south in Cass County. There were no shoulders on either side and the west ditch was three to four feet deep. At one point Chestnut intersects at right angles with the country club road. Fifteen hundred and sixty feet north of this intersection is a driveway going east off Chestnut, serving the Rodgers property. Going north from the country club intersection, Chestnut goes downhill to beyond the Rodgers driveway, but it is steeper at the start and at the bottom of the hill. Some distance north of the intersection the road tends to level off for a space and then 260 feet south of the Rodgers driveway goes downhill again. Headlights of a northbound vehicle 450 feet south of

the Rodgers driveway could be seen from the driveway. There was a space of 635 feet farther south that similar headlights could not be seen from the driveway.

After attending a movie Jack Bair invited plaintiff and his date to ride with him in his father's automobile. The Bair car went south up Chestnut to the country club area, turned around and proceeded back onto Chestnut. Bair testified he was proceeding about 60 m.p.h.

Defendant Andrews' deposition taken before trial was offered by plaintiff. Defendant had picked up his daughter and the Rodgers girl at the theatre and turned into the Rodgers driveway to let her out. He then backed out of the driveway, stopped his car when its back end was three to four feet from the roadway (he would be sitting about 12 feet in front of the back end of the car) and looked in both directions once, but does not know which direction he looked first. From this point he claims to have an unobstructed view south on the highway for 470 feet to the top of the hill·and saw no lights or automobiles approaching from either direction.

While looking out the rear end of his car, he proceeded to back out across the roadway diagonally northwesterly, intending to go south. When his right rear wheel was close to the west edge of the roadway and at an angle, he brought his car to a stop with a portion of it in the east lane. He then put his car in drive and was ready to go forward when he saw the headlights of the Bair car on his own side of the road, a good 400 feet south. Without continuing to observe the lights he immediately "shot his car into the driveway," as he could tell "the car was coming fast enough that he wanted to get out of there." After stopping in the Rodgers driveway, defendant observed the Bair car south of it swerve to the west side of the highway and go off the road. There was no contact between Bair's car and defendant's car.

Bair testified he first observed the Andrews car when he was in his right lane on top of the little knoll after he had been in the draw; the Andrews car lit up by Bair's headlights was headed southeast at about a 45-degree angle and occupied all the road with the front of the car in the east lane; the Andrews

car was stationary but as Bair went forward Andrews pulled into the driveway until Bair's car passed; the back part of defendant's car was in the east lane of travel still on the highway.

When he first saw the Andrews car Bair applied his brakes and turned to the left; as his car swerved slightly he released the brakes and his car was going straight down the road until it started to veer into the Andrews car; he turned the car back to the west and the left wheel caught the shoulder and pulled it into the west ditch at a point just south of the Rodgers driveway. The Bair car, in going off the shoulder, rolled on its side somewhat, then righted itself and went on down the ditch, hit the Fehr driveway on the west, 180 feet north of the Rodgers driveway, went over it and came to rest with the back half of the automobile on the driveway and the front half beyond.

There were skid marks from both the left and right wheels of the Bair vehicle, both started on the east side of the road and extended to where the car went off the edge of the road. The overall distance was 200 feet and they crossed over the center of the road approximately 50 feet from where they went into the ditch.

II. Plaintiff relies upon defendant's negligence as *the* proximate cause of his injuries and damages in the following particulars: (a) Failure to keep a proper lookout; (b) failure to yield the right-of-way to another vehicle approaching so closely as to constitute a hazard; (c) driving in the left lane directly in front of the automobile in which plaintiff was riding; (d) failure to have his car under control; (e) failure to drive on the right-hand side of the road when driving up over a hill; and (f) when meeting the automobile in which plaintiff was riding.

As an affirmative defense defendant alleges the *sole and proximate* cause of plaintiff's injuries was the negligence of Bair, driver of the vehicle in which plaintiff was riding, in: (a) Failure to have his car under control and (b) keep a lookout ahead; (c) driving at an excessive and dangerous speed; and (d) driving at a speed greater than permitted him to stop within the assured clear distance ahead.

III. Defendant's motion for directed verdict at the close of plaintiff's evidence was sustained as to 23 of the 25 grounds urged. They need not be set out.

Plaintiff's notice of appeal limits the errors relied on for reversal. Rule 340(b), Rules of Civil Procedure. They are that the trial court erred in (1) sustaining defendant's motion for a directed verdict and (2) admitting testimony that Jack Bair entered a plea of guilty before a justice of the peace to a charge of not having his vehicle under control.

IV. We consider first whether plaintiff's evidence required submission of the cause to a jury.

In considering the propriety of a directed verdict for defendant the court gives plaintiff's evidence the most favorable construction it will reasonably bear. Citation of authority is unnecessary. Rule 344(f)(2), R. C. P. Generally questions of negligence, contributory negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Rule 344(f)(10), R. C. P.

 Plaintiff contends defendant was not free from negligence as a matter of law. Of course, he has the burden to prove defendant's negligence by substantial evidence of sufficient weight to generate a jury question. Christensen v. Kelley, 257 Iowa 1320, 1325, 135 N.W.2d 510, 513. He argues there was sufficient evidence to require submission of at least five of his pleaded specifications of negligence and Bair's operation of his vehicle did not constitute an independent intervening cause.

 Defendant contends the trial court properly directed a verdict as plaintiff's evidence fails to establish any negligence on his part. He argues there is evidence he did maintain a proper lookout, yield the right-of-way, was not negligent in backing onto a highway when there were no vehicles in view or within 470 feet, there was no evidence he was meeting plaintiff and failed to drive on his right-hand side nor was he driving over a hill. Defendant further contends the action of the trial court was correct because the evidence correctly established Bair's negligence was the sole proximate cause of plaintiff's injuries. As to this affirmative defense defendant would have the burden of proof.

As to the duty owed by defendant in backing his vehicle from a private driveway onto a public highway, both parties appear to be in agreement. They cite Carstensen v. Thomsen, 215 Iowa 427, 245 N.W. 734.

The authorities seem to agree as to the extent of this duty.

"Backing a motor vehicle from private property onto a public highway is an operation demanding a high degree of skill and caution to avoid danger or injury to any vehicle on the highway, and one engaged in such operation must use greater care than is required of one driving along the highway.

"In backing an automobile from a private driveway onto a public street, the driver must exercise such care as a prudent person, with realization of the extreme danger, would exercise under similar circumstances, and he may be required to exercise a higher degree of care than when going forward onto a highway.

"In the exercise of due care, a motorist backing from a driveway should maintain a proper lookout, give a warning as to his intentions, and bring the vehicle to a stop at the end of the driveway, and a failure to exercise any of these precautions may constitute negligence." 3 Blashfield Automobile Law and Practice, Third Ed., section 120.17.

In 8 Am. Jur.2d, Automobiles and Highway Traffic, section 793, it is stated:

"However, it has been stated that more than usual care is required in backing out of a private driveway, and that one backing from private property onto a public highway must use greater care than would be required of one driving along the highway. The operator of a motor vehicle backing onto a public highway or street from private property is under a duty of yielding the right-of-way in the road or sidewalk to other travelers, must exercise at least reasonable care commensurate with the circumstances to look out for other users of the road or sidewalk, and must refrain from backing into the public way until he ascertains that such movement may be made with safety."

In 60 C. J. S., Motor Vehicles, section 345 (b), the editors say:

"Backing out from private property onto a public highway is an operation demanding a high degree of skill and caution to avoid danger or injury to any person on the highway or collision with any vehicle thereon. The care required in such case has been characterized as ordinary care, great care, such care as a prudent person with a realization of the extreme danger should exercise, and that degree of caution and vigilance that an ordinarily careful and vigilant driver would exercise under similar circumstances to avoid collision with approaching vehicles; and it has been stated that an operator should not proceed into the highway unless, as a reasonably prudent and cautious person, he believes, and has a right to believe, that entry may be made with due regard to other vehicles approaching on the same side of the highway. Usually one engaged in such operation must use greater care than would be required of one driving along the highway.

"It is the duty of the operator to keep a lookout * * *."

"The degree of diligence and attention required of a driver in a particular case in exercising reasonable care will vary with, and must be measured in the light of, all the surrounding circumstances, including physical facts generally * * *." 60 C. J. S., Motor Vehicles, section 247.

Carstensen v. Thomsen, supra, is cited in the footnote as support for the first C. J. S. text. At page 431 of 215 Iowa, page 736 of 245 N.W., we said:

"* * * It is, however, the duty of one thus entering a highway [by backing from a private driveway] to look and not to proceed therein unless, as a reasonably prudent and cautious person, he believes, and has a right to believe, that the highway may be entered with due regard to the safety of other vehicles approaching on the same side of the highway" (citing cases).

V. Plaintiff's first specification of negligence was defendant's failure to keep a proper lookout.

"Keeping a proper lookout is not a statutory duty in Iowa but motorists have a common-law duty to exercise ordinary care under the circumstances in maintaining a lookout [citing cases].

".. "* * * Proper lookout means more than seeing the object. It implies being watchful of the movements of the driver's own vehicle as well as the movements of the thing seen or seeable. It involves the care, watchfulness and attention of the ordinarily prudent person under the circumstances [citing cases].

"We have said several times that turning in front of an oncoming car is evidence of failure to keep a proper lookout." Mathews v. Beyer, 254 Iowa 52, 57, 58, 116 N.W.2d 477, 480, and citations.

We have also held when there is evidence that a party was driving on his left-hand side of the road, lookout is necessarily involved. Hackman v. Beckwith, 245 Iowa 791, 802, 64 N.W.2d 275, 282.

■ There was sufficient evidence to submit this specification to a jury: Failure to do so was error.

VI. Plaintiff's second specification of negligence, failure to yield the right-of-way, is closely allied to lookout. Section 321.353, Code, 1966, provides:

"Stop before crossing sidewalk—right of way. * * * The driver of a vehicle about to enter or cross a highway from a private road or driveway shall stop such vehicle immediately prior to driving on said highway and shall yield the right of way to all vehicles approaching on said highway."

The statute contains two requirements which must be obeyed by a motorist backing from a private driveway onto a public highway or street. First, he must stop immediately prior to driving on the highway. The evidence is undisputed Andrews stopped when the back end of his vehicle was three or four feet from the highway. But more is required. He must yield to all approaching vehicles. In addition to the duties imposed by statute he has the common-law duty to exercise the care required under similar circumstances. Division IV, supra. Beezley v. Kleinholtz, 251 Iowa 133, 136, 100 N.W.2d 105, 107; Christensen v. Kelley, supra, 257 Iowa, at 1324, 135 N.W.2d, at 512, and citations.

■ As a reasonably prudent person with a realization of the extreme danger, exercising the care required under similar circumstances, one would not enter a public highway or street

while backing from a private driveway unless he first determined that no vehicle was approaching close enough to constitute a hazard or approaching within a reasonably safe distance. Generally speaking, we say such distance is the distance a vehicle traveling within the speed limit would cover while one was attempting to make the maneuver required in backing out and proceeding forward onto the highway in his proper lane. Kuehn v. Jenkins, 251 Iowa 557, 564, 100 N.W.2d 604, 609.

There was sufficient evidence to require submission of plaintiff's second specification to the jury.

VII. Plaintiff's third specification, defendant's backing his automobile onto the roadway so at least a part extended into the wrong lane in front of the automobile in which plaintiff was riding, and his sixth specification, defendant's failure to drive his automobile on the right-hand side of the road when meeting the automobile in which plaintiff was riding will be considered together.

As stated, immediately before the incident defendant's vehicle had been backed from the Rodgers driveway onto the highway. The occupants in the Bair vehicle testified when they first saw defendant's car a portion of it was in the east lane. Defendant in describing the angle of his vehicle as he was ready to go forward said, "It is possible that angle would have been enough so a portion of the front of my car would have been in the east lane."

Defendant's contention that Andrews by driving into the driveway not only gave the Bair car one half of the traveled way but the entire width of the highway cannot be accepted. To reach the driveway defendant would, of necessity, have had to turn left in front of the Bair car. A jury would be justified in finding that the yielding maneuver was too late.

Neither can his contention that his car and the Bair car were not meeting be sustained. As used in section 321.298, Code, 1966, the phrase "persons meeting each other" does not mean merely persons passing each other while going in opposite directions but it implies a coming together in such manner that there would be an actual collision, or an apparent danger of one, if they should pursue their course without change of direction.

Baker v. Zimmerman, 179 Iowa 272, 278, 161 N.W. 479, 481; Hubbard v. Bartholomew, 163 Iowa 58, 63, 144 N.W. 13, 15, 49 L. R. A., N. S., 443.

The court erred by not submitting plaintiff's third and sixth specifications.

VIII. Plaintiff's fourth specification, defendant's failure to have his car under control, was not argued by either side. The question of control largely depends upon the circumstances of each case and is ordinarily a question for the jury. Under the facts here the question of whether Andrews had his motor vehicle under proper control would be for the jury. Goman v. Benedik, 253 Iowa 719, 725, 726, 113 N.W.2d 738, 742. As to when a motor vehicle is under control see Schneider v. Swaney Motor Car Co., 257 Iowa, 1177, 1184, 136 N.W.2d 338, 342.

IX. Plaintiff argues in support of his fifth specification, defendant's failure to drive his automobile on the right side of the road when driving up over a hill, that Code sections 321.304 and 321.364 are applicable. Section 321.304 in part states:

"No vehicle shall * * * be driven to the left side of the roadway under the following conditions:

"1. When approaching the crest of a grade or * * * where the driver's view along the highway is obstructed for a distance of approximately seven hundred feet."

Section 321.364 states in part:

"The driver of a motor vehicle * * * approaching the crest of a hill or grade shall have such motor vehicle under control and on the right-hand side of the roadway * * *."

While defendant might have originally intended to go south and thus approach the crest of the hill, the only evidence as to movement of his vehicle after being stationary in the middle of the road is a maneuver to the east. Defendant would not be going toward, nor continuing to advance near to a point aimed at, the crest of the hill. See Webster's New Twentieth Century Dictionary, Second Ed., 1964. It cannot be said defendant was approaching the crest of the hill. Under the circumstances the court did not err in failing to submit this specification.

942

X. The final proposition plaintiff argues under this assignment is that Bair's acts did not constitute an independent intervening cause. Defendant contends Bair's negligence was the sole proximate cause of plaintiff's injuries.

In ruling on defendant's motion the trial court indicated he was of the opinion "* * * the acts of plaintiff's driver were a separate and intervening cause * * *."

"An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement, Second, Torts, section 441 (1).

It has also been defined as "A new and independent force, which breaks the causal connection between the original wrong and the injury and is the proximate cause of the injury." 1 Blashfield Automobile Law and Practice, Third Ed., section 53.5.

Where there is an intervening efficient cause the original act of negligence is the remote cause and not the proximate cause. Blashfield, supra.

"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Restatement, Second, Torts, section 431.

Frederick v. Goff, 251 Iowa 290, 298, 299, 100 N.W.2d 624, 629, and citations therein support this statement.

There may be more than one proximate cause of an accident or injury. Lockwood v. Wiltgen, 251 Iowa 484, 490, 101 N.W.2d 724, 728, and citations. "Nor will the fact that some other cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable *in some material degree* to his want of due care [citations]." (Emphasis added.) Swaim v. Chicago, R. I. & P. Ry. Co., 187 Iowa 466, 471, 174 N.W. 384, 386, quoted in Frederick v. Goff, supra.

While of course plaintiff had the burden to prove direct causal connection between defendant's negligence, in one or

more of the respects alleged, and the happening of the accident, the burden of proving this pleaded defense that Bair's negligence was the sole proximate cause thereof rested on defendant. Frideres v. Lowden, 235 Iowa 640, 642, 17 N.W.2d 396, 397; McMaster v. Hutchins, 255 Iowa 39, 47, 48, 120 N.W.2d 509, 514, and citations.

The trial court's ruling, in effect, held defendant had established this affirmative defense as a matter of law. It is seldom that one having the burden of proving an issue can be said to have established it as a matter of law. Frideres v. Lowden, supra; Maland v. Tesdall, 232 Iowa 959, 963, 5 N.W.2d 327, 329; Kellogg v. Rhodes, 231 Iowa 1340, 1342, 4 N.W.2d 412, 413; Low v. Ford Hopkins Co., 231 Iowa 251, 254, 1 N.W.2d 95, 97.

The question of Bair's negligence as an intervening cause or as the sole proximate cause should be submitted to the jury under proper instructions, bearing in mind that the negligence of an operator of an automobile is not imputable to a passenger who has no right of control over the car. Frideres v. Lowden, supra, 235 Iowa, at 647, 648, 17 N.W.2d, at 400.

XI. In view of a reversal we should consider plaintiff's second assignment of error, the admission of testimony that Jack Bair entered a plea of guilty before a justice of the peace to a charge of not having his vehicle under control. This problem arose during cross-examination of Bair when asked:

"Q. * * * you lost control of the car, didn't you? A. No, not completely. The car swerved, but I had the car under control. * * *

"Q. And you mean to say you haven't told anyone you lost control of the car? A. No, sir.

"Q. Did you appear in the justice of peace court— A. Yes.

"Q. —in Atlantic, Iowa— A. Yes, sir.

"Q. —and enter a plea of guilty to—"

At this point plaintiff's objection was made. After some colloquy between counsel and the court the witness was permitted to answer and said, "Yes." The objection was overruled.

Later, in the jury's absence, plaintiff moved the court to admonish the jury to disregard the question to Bair and the answer thereto as not cross-examination, immaterial, irrelevant, incompetent, no bearing on any issue and plaintiff was not bound by any admissions of Bair. The court at that time stated: "This is an admission against interest."

Defendant's counsel added, "I know, but you are talking about an admission against interest. This is the only reason that this is admissible, as an admission against interest."

It appears the sole purpose of defendant's counsel in offering this testimony was as an admission against Bair. Limited to this purpose, it was clearly inadmissible. The use of the phrase "admission against interest" is an invitation to confuse two separate exceptions to the hearsay rule. McCormick on Evidence, section 240; 4 Wigmore on Evidence, Third Ed., section 1049.

In argument both counsel suggest for the first time the testimony was impeachment of Bair. Defendant's statement as to the purpose for which the testimony was offered is binding on him here. However, if we consider the offer as for impeachment, no proper foundation was laid therefor. Law v. Hemmingsen, 249 Iowa 820, 834, 835, 89 N.W.2d 386, 396.

"It is not enough to ask him the general question whether he has ever said so and so." McCormick on Evidence, section 37, footnote 6.

Defendant's contention the plea of guilty "is certainly a declaration against the plaintiff" is untenable. 5 Wigmore on Evidence, Third Ed., sections 1456, 1461 and 1476.

The rule announced in Book v. Datema, 256 Iowa 1330, 131 N.W.2d 470, as to the admissibility of such evidence as an admission against a party to the action, appears to express the view of the majority of this court as now constituted. We need not determine what our holding would be in interpreting section 321.490 if such testimony is offered for impeachment and the question is properly raised in the trial court.

Because of the trial court's failure to submit the specifications of negligence here approved, the cause is—Reversed.

GARFIELD, C. J., and MOORE, STUART, RAWLINGS and BECKER, JJ., concur.

LARSON and SNELL, JJ., concur in the result but dissent from Division VIII.

LARSON, J., also dissents from Division IV.

THORNTON, J., not sitting.