SHARON COATES DAVIDSON, appellee, v. R. J. COONEY, d/b/a R. J. COONEY CONSTRUCTION COMPANY, appellant.

MARGERY DAVIS, formerly Margery Fry, formerly Margery Carlson, appellee, v. R. J. COONEY, d/b/a R. J. COONEY CONSTRUCTION COMPANY, appellant.

No. 52014.

JANUARY 10, 1967.

1280

Hart & Hart, of Waukon, for appellant.

Sheridan & Sheridan, of Waukon, for appellee Davidson.

Walter L. McNamara, of Cedar Rapids, for appellee Davis.

GARFIELD, C. J.—The main question this appeal presents is the sufficiency of the proof by circumstantial evidence of the claimed negligence of defendant as a proximate cause of injuries suffered by plaintiff Sharon Coates Davidson and cross-petitioner (in reality another plaintiff) Margery Davis from a collision of motor vehicles. We hold the proof was sufficient for submission to the jury.

I. At the outset we express disapproval of the 360-page record on appeal. At least half of it is filled with matters not material to the appeal which should have been omitted as rule 340, Rules of Civil Procedure, contemplates.

It is regrettable too that disposition of the controversy arising from an accident on December 4, 1959, has been unduly delayed largely by a multitude of procedural moves most of which were disposed of in a manner not now complained of. See in this connection Winneshiek Mutual Ins. Assn. v. Roach, 257 Iowa 354, 357, 132 N.W.2d 436, 439. A small part of the delay may also be traced to preparation of a record needlessly long.

II. The case is somewhat unusual in that no vehicle of defendant-appellant Cooney was directly involved in the collision. He operated a rock quarry near the place of collision and it is claimed his trucks were loaded so material leaked or otherwise escaped therefrom onto the roadway, in violation of section 321.460, Codes, 1958, 1962, and the condition was a proximate cause of the collision between the vehicle in which plaintiff Sharon Davidson was riding, driven by Margery Davis, and the one driven by a Mrs. Henderson. Cooney insists there is no proof any material escaped onto the roadway from his trucks on the day of the collision.

At the time of the accident the girls Sharon and Margery were high school students at Postville who were traveling north on paved primary Highway 51 toward Waukon in an auto a boy friend of Margery loaned them for the trip. The collision with the Henderson oncoming car occurred about three miles north of Postville near the foot of a hill the girls had descended and just north of a T intersection between 51 and a county road running east, surfaced with crushed rock. Two hundred twenty feet east of 51, on the north side of the county road, was the entrance to a stockpile of crushed rock hauled there from Cooney's quarry about 550 feet north of the county road, on the east side of 51.

In hauling from the quarry to the stockpile defendant's trucks were driven south on 51 to the county road and thence east to the stockpile. The return trip to the quarry was made over the same route. On the day of the accident Cooney's trucks hauled 48 loads of crushed rock from his quarry to his stockpile between 7 a.m. and noon when Cooney's men stopped hauling for the day. The collision occurred about 3:40 p.m.

Several witnesses testified in substance the roadway on 51 for the 550 feet between defendant's quarry and stockpile was more or less covered with rock, gravel, lime and other debris which was slimy, wet and slippery. South of its intersection with the county road and north of the entrance to the Cooney quarry, 51 was dry and without debris.

Right after the girls passed the intersection with the county road their car skidded on debris on the roadway of 51. Margery succeeded in straightening the course of the car but encountered a second slippery spot within about 10 to 15 feet, the car skidded again and she was unable to control it or avoid colliding with the southbound car driven by Mrs. Henderson.

One circumstance that makes proof of plaintiff's case more difficult is that 98 loads of crushed rock were hauled on December 4 up to 3 to 3:30 p.m. over the same 550 feet of Highway 51 by employees of Leas who operated a quarry adjoining Cooney's on the north. Naturally, Cooney is inclined to blame Leas' truckers for the condition of the roadway of which plaintiff complains.

The circumstance just referred to would be more formidable

if it were not for the fact Leas' loaded trucks entered Highway 51 as much as 200 feet north of the place where defendant's trucks entered it and continued on 51 to Postville, about three miles beyond the place where Cooney's trucks left it and, as indicated, there is substantial evidence debris was found only on the 550 feet of 51 over which Cooney's trucks traveled. It is true Leas' empty trucks returned over the county road and thence north on 51 to the Leas quarry.

There are other circumstances which support the claim the debris came from defendant's trucks rather than Leas'. The jury could properly find Leas' trucks were more carefully loaded than defendant's were. They went to a road project east of Postville, the loads were weighed after leaving the floor of the Leas' quarry and the county paid for the rock as weighed. Loads on defendant's trucks, however, were not weighed or sold but merely transported to the stockpile after making a left turn from 51 onto the county road. There is also evidence the endgate of defendant's trucks was not always closed when they made the return trip to the quarry. Further, one of the two drivers for defendant said he was unable to see through the window of the cab of the truck when the trucks were loaded. Some of Leas' drivers testified no material was spilled from their trucks that day.

III. In considering defendant's claim he was entitled to a directed verdict we consider the evidence in the light most favorable to plaintiff. Division II hereof was written with this in mind.

█ Generally questions of negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law.

█ An issue may be proven by circumstantial evidence but this evidence must be such as to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, however, it is for the jury to say whether circumstantial evidence meets this test. Rule 344(f)(2), (10) and (16), Rules of Civil Procedure.

█ It is not necessary in a civil case that circumstantial evidence be so clear as to exclude every other possible theory.

Soreide v. Vilas & Co., 247 Iowa 1139, 1143, 78 N.W.2d 41, 43, 44, and citations; Larson v. Johnson, 253 Iowa 1232, 1234, 115 N.W.2d 849, 850, and citations; Christianson v. Kramer, 257 Iowa 974, 135 N.W.2d 644, 650.

■ IV. Sole ground of negligence submitted to the jury was that defendant's trucks were driven onto Highway 51 without being so loaded as to prevent rock, lime or mud from dropping, sifting, leaking, or otherwise escaping therefrom onto the highway, causing it to be slippery and hazardous in violation of section 321.460, Codes, 1958, 1962.

So far as applicable here this statute provides: "Spilling loads on highways. No vehicle shall be driven * * * on any highway unless such vehicle is so * * * loaded as to prevent any of its load from dropping, sifting, leaking, or otherwise escaping therefrom, * * *."

As before indicated, we think there was substantial evidence summarized in Division II hereof to warrant submission to the jury of this charge of negligence. Our conclusion finds support in Overhouser v. American Cereal Co., 118 Iowa 417, 421, 92 N.W. 74; Lockwood v. Wiltgen, 251 Iowa 484, 487–489, 101 N.W.2d 724, 726, 727; Matsumato v. Arizona Sand & Rock Co., 80 Ariz. 232, 295 P.2d 850, 56 A. L. R.2d 1385, 1390, 1391, and annotation, 1392, 1400–1404; Price v. Parks, 127 Fla. 744, 173 So. 903; Meil v. Syracuse Constructors, Inc., 19 App. Div.2d 10, 240 N. Y. S.2d 403; Dudley & Orr v. Jacobs, Tex. Civ. App., 257 S.W. 315. See also as having some bearing Hawkeye-Security Ins. Co. v. Lowe Constr. Co., 251 Iowa 27, 30, 99 N.W.2d 421, 424; Shannon v. Missouri Valley Limestone Co., 255 Iowa 528, 122 N.W.2d 278; Solberg v. Schlosser, 20 N.D. 307, 127 N.W. 91, 93, 94, 30 L. R. A., N. S., 1111.

■ V. There is little doubt the issue of proximate cause was also for the jury. In several recent decisions we have approved this from Restatement, Second, Torts, section 431: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Frederick v. Goff, 251 Iowa 290, 298, 100

N.W.2d 624, 629; Wheatley v. Heideman, 251 Iowa 695, 712, 102 N.W.2d 343, 353, 354; Sayre v. Andrews, 259 Iowa 930, 942, 146 N.W.2d 336, 344.

■ "Nor will the fact that some other cause operates with defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable in some material degree to his want of due care" (citations). Swaim v. Chicago, R. I. & P. R. Co. (1919), 187 Iowa 466, 471, 174 N.W. 384, 386 (certiorari denied 252 U. S. 577, 40 S. Ct. 344, 64 L. Ed. 725); Lockwood v. Wiltgen, supra, 251 Iowa 484, 491, 101 N.W.2d 724, 728; precedents last cited above.

■ ■ Of course there may be more than one proximate cause of an injury. Sayre v. Andrews, Lockwood v. Wiltgen, both supra, and citations therein. Nor would the negligence of the driver of the car in which Sharon was riding as a passenger be imputable to her unless she had a right, in some manner, to control its operation. Sayre and Lockwood cases; Mathews v. Beyer, 254 Iowa 52, 59, 116 N.W.2d 477, 481. There is no evidence Sharon had such right.

It is not contended Margery, the driver, was not entitled to recover on the ground she was contributorially negligent as a matter of law.

See also on the issue of proximate cause Overhouser v. American Cereal Co., supra, 118 Iowa 417, 422, 92 N.W. 74; Whitlatch v. City of Iowa Falls, 199 Iowa 73, 80, 201 N.W. 83.

VI. Instructions which submitted to the jury the charge of negligence referred to in Division IV hereof are assailed as without sufficient support in the evidence and the claimed negligence was not a proximate cause of plaintiffs' injuries. We have held against these contentions in the two preceding divisions hereof. Elaboration of what is there said is deemed unnecessary.

■ VII. Defendant's remaining assigned error is based on receipt of testimony of Sharon's brother as to his observations of Highway 51, and concerning a snapshot taken by him, the morning after the collision.

This witness testified he went to the scene of the accident early in the morning after it happened and observed a light, clear substance frozen to the pavement and several spots of loose

gravel between the entrance to defendant's quarry and the county road running past his stockpile. He also took a snapshot of part of this segment of the highway and said a "line" shown in the picture was gravel. The court excluded offered testimony of this witness as to tracks on the highway. Defendant's objection to the testimony received as incompetent, irrelevant, immaterial in point of time and without foundation was overruled. The record shows no objection to the offer of the snapshot as an exhibit.

Defendant calls attention to statements in 8 Am. Jur.2d, Automobiles and Highway Traffic, section 958, page 505; Hackman v. Beckwith, 245 Iowa 791, 805, 64 N.W.2d 275, 283, 284, and Ficke v. Gibson, 153 Neb. 478, 45 N.W.2d 436, 438, 439, that evidence of tire marks (and, in Ficke, foot and tire marks) at the scene of an accident is inadmissible unless it is shown conditions were the same when the marks were observed as at the time of the accident.

We do not question the stated rule but think it is not applicable to evidence received here as to the condition of the roadway the morning after the accident. The jury could properly find the accident occurred about 4 p.m., that nothing was hauled south from either quarry in the vicinity between that time and time of the witness' observations, and the only change in the condition testified about was the result of freezing. (One witness testified to conditions he observed as late as 5:30 on December 4.) It clearly appears there was some thawing on December 4 when witnesses said the surface was wet and slimy. Sharon's brother testified it was cold the next morning when he made his observations. This would be normal for the locality in early December. It is probable the condition described by the witness was less hazardous than conditions at the time of the accident.

It seems unlikely the jury would not weigh the evidence complained of in the light of their knowledge of the normal change of conditions caused by the drop in temperature during the preceding night. The trial court appears to have given careful consideration to the admissibility of this evidence and we are not persuaded its receipt was reversible error.

1286

Although not strictly in point, our conclusion finds some support in Coonley v. Lowden, 234 Iowa 731, 741–744, 12 N.W.2d 870, 877, 878 (Division III of opinion), and citations; Torrence v. Sharp, 246 Iowa 460, 462, 463, 68 N.W.2d 85, 87; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718–720, 107 N.W.2d 85, 92, 93 (Division V of opinion); Meil v. Syracuse Constructors, Inc., supra, 19 App. Div.2d 10, 240 N. Y. S.2d 403; Zinda v. Pavloski, 29 Wis.2d 640, 139 N.W.2d 563, 565, 566.

We find no reversible error in any respect assigned and argued by appellant.—Affirmed.

All JUSTICES concur.